IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACK GALARDI, RED EYED INC. d/b/a CRAZY HORSE SALOON, WALLEYE, LLC MIA LUNA, INC. d/b/a PINK PONY SOUTH, and JG&P, LLC, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NUMBER |
| vs. | ) ) | 1:12-CV-00531-SCJ |
| CITY OF FOREST PARK, CORINE DEYTON, individually and in her official capacity as Mayor, SPARKLE ADAMS, MAUDIE MCCORD, and LINDA LORD, individually and in their official capacity as Council Members, and JOHN PARKER, individually and in his official capacity as City Manager, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

## I.   INTRODUCTION AND FACTS

The Court should dismiss this action brought by Jack Galardi, Red Eyed,

Inc., Walleye, LLC, Mia Luna, Inc., and JG&P, LLC ("plaintiffs") at this early

stage because all of the claims fail as a matter of law.  These claims fail due to a

lack of standing, the application of the doctrines of res judicata and collateral estoppel, or underlying substantive defects in the claims themselves.

The parties to this case have been involved in extensive litigation since 2009, all filed by plaintiffs herein.  It is important that the Court understand the long history of litigation between the parties because many of the arguments developed herein by defendants are premised upon the fact that plaintiffs are merely making the same claims that they have made repeatedly in the past.

## A.   <u>Litigation History</u>

Since 1997, plaintiffs have sued the City of Forest Park and its officials no less than 14 times.  Certain of those lawsuits merit some discussion herein, because they are either central to the allegations in plaintiffs' complaint, or a key to one or more of the defenses put forth by defendants in this motion.

### (a)   <u>1997 Litigation</u>

In 1997 plaintiff Red Eyed, Inc. sued the City. Plaintiffs allege in the current litigation that Red Eyed and the City settled the lawsuit with an agreement "to refrain from enforcing the provision prohibiting alcohol sale or consumption at sexually oriented businesses."  (Complaint ¶¶ 17-19.)  This settlement agreement, according to plaintiffs, gives them a vested right indefinitely to conduct adult

entertainment at the Crazy Horse Saloon under the regulations that existed in 1997.

(Complaint, ¶¶ 16-19, 27, 29, 89, 101, 130, 141, 159.)

Contrary to plaintiffs' allegations, during the long course of litigation between the parties, plaintiffs have failed to get a ruling that finds such a vested right.  For instance, the Clayton County Superior Court judge denied the exact claim,[1] and prior to that, plaintiffs dismissed a superior court lawsuit alleging that defendants were in contempt of the settlement in the 2004 litigation. [2]

---

[1] Attached hereto as Exhibit A is a copy of the Superior Court's order, Civil Action File No. 2011-CV-00832-6.  That matter is currently on appeal to the Georgia Court of Appeals. Defendants' submission of materials outside the pleadings does not convert this motion to dismiss into a motion for summary judgment.  The prior litigation between the parties, including the 1997, 2004, and 2009 litigation, can be considered in ruling on this motion to dismiss because plaintiffs' complaint repeatedly references the litigation (Complaint ¶¶ 18-19, 21-23, 25, 27, 29, 34-35, 55, n. 3, 73, n. 4, 89, 97, n. 5, 101, 109, n. 6, 130, 141, 159), and the litigation is central to the allegations in plaintiff's complaint.  Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  The complaint also directly references matters encompassed by the attached litigation materials. Moreover, "when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Davis v. Williams Communications, Inc., 258 F.Supp.2d 1348, 1352 (N.D. Ga. 2003).  All of the documents attached hereto are public record as defined by the Georgia Open Records Act and the federal Freedom of Information Act. O.C.G.A. § 50-18-70 (a); 5 U.S.C. § 552.

[2]   The Clayton County Superior Court assigned the contempt action Civil Action File No. 2009-CV-01684-6.  A copy of the petition for contempt and the dismissal in that case are attached hereto as Exhibit "A-1."

**(b)**   **2004 Litigation**

In 2004, plaintiff Mia Luna, Inc. sued the City, resulting in a settlement between the parties that was finalized in 2008. (Complaint, ¶¶ 21-23.) In this action, plaintiffs allege that the settlement "provided that Mia Luna could use the Frontage Road Property as an adult entertainment establishment with nude dancing and on-premise alcohol service." (Complaint, ¶ 22.) Plaintiffs again base many of their claims in this lawsuit on their view that the 2008 settlement gave them vested property rights to conduct adult entertainment at the Pink Pony South under the regulations that existed in 2007. (Complaint, ¶¶ 20-25, 89, 101, 130, 141, 159.)

While plaintiffs have previously asserted this same claim, they have been unsuccessful in obtaining a favorable ruling. In the same Clayton County Superior Court order referenced above, the court held that the settlement of the 2004 litigation granted no vested rights, and that it merely assured Mia Luna, Inc. that it would be issued an alcohol permit and adult entertainment license for the year in which the settlement was consummated. (See Exhibit A at pp. 7, 10-12.)[3]

---

[3]   There is another reason that this motion is not converted to a motion for summary judgment because of the attached materials. Defendants also make the derivative argument herein that plaintiffs lack standing to bring many of the claims asserted in this case. Claims of a lack of standing are jurisdictional in nature. CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257 1269 (11th Cir. 2006); Granite State Outdoor Adver., Inc. v. City of Clearwater, 351 F.3d 1112, 1116 (11th Cir. 2003); Action Outdoor Advert. II, LLC v. Lumpkin County, 543

**(c)**   **2009 Federal Litigation**

Despite the 1997 and 2004 litigation, the parties otherwise coexisted until March of 2009, when the City extensively revised its adult entertainment ordinance.  (Complaint, ¶ 33.)  Since March of 2009, plaintiffs and their employees have filed 12 lawsuits (including this case) against the City and the individual defendants challenging the City's adult entertainment ordinance, amendments thereto, and various aspects of the City's regulation of the clubs.[4]  Reference to the 2009 cases demonstrates that very little of this current action is new.

For instance, on April 10, 2009, plaintiffs filed a lawsuit in U.S. District Court for the Northern District of Georgia (Civil Action File No. 1:09-CV-0965-AMT), in which they extensively challenged the City's March 23, 2009 adult entertainment ordinance and all subsequent amendments thereto.[5]  (Complaint, ¶¶ 34-35.)   Although the District Court issued orders dismissing all of plaintiffs'

---

F.Supp.2d 1334, 1343 (N.D. Ga. 2008).  Because defendants' standing arguments challenge "the existence of subject matter jurisdiction […] matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  In factual jurisdictional attacks, the presumption of truth does not attach to plaintiffs' allegations, and the court is free to weigh the evidence and evaluate for itself the merits of jurisdictional claims. Id.

[4]  Only six of the twelve lawsuits, including this case, remain pending.  Either the courts or plaintiffs themselves have dismissed the remainder.

[5]  The amended complaint in that litigation challenged the March, 2010 revision to the 2009 adult entertainment ordinance.  The March, 2010 revision is very similar to the current adult entertainment ordinance in place in the City.

claims on substantive grounds, the Eleventh Circuit Court of Appeals ultimately dismissed plaintiffs' entire lawsuit based on plaintiffs' lack of standing. (Complaint, ¶ 34, n. 1.)  The Eleventh Circuit premised plaintiff's lack of standing on the fact that during the course of the litigation, the City refused to renew plaintiffs' adult entertainment licenses because of the presence of private rooms or booths, and plaintiffs did not challenge the portion of the ordinance banning such rooms.  (Attached hereto as Exhibit "B" are the amended complaint, District Court orders, and Eleventh Circuit orders in the 2009 federal litigation.)[6]

The substance of the 2009 litigation is important because plaintiffs again hinge liability in this case in part on the enactment of the City's adult entertainment ordinance and/or its enforcement.  (Complaint, ¶¶ 80, 81, 91, 103, 126, 127, 132, 143, 161, 175, 179.)  Yet, as demonstrated herein plaintiffs are precluded by the doctrine of collateral estoppel from bringing claims based on the

---

[6] Plaintiffs filed two appeals to the Eleventh Circuit Court of Appeals in the 2009 federal litigation.  The Eleventh Circuit denied the first appeal, which sought review of the District Court's order denying plaintiffs a temporary restraining order, based on lack of standing, and also denied plaintiffs' request for a rehearing. The Eleventh Circuit dismissed plaintiffs' second appeal, Appeal No. 11-14414, which sought review of the District Court's final order, for want of prosecution because plaintiffs failed to file a timely appellate brief.  See Exhibit "B." Defendants have omitted the exhibits to the pleadings attached hereto because of their voluminous nature.

enactment or enforcement of the adult entertainment ordinance because of the Eleventh Circuit's standing ruling.

**(d)     2011 Clayton County Superior Court Litigation**

Attached hereto as Exhibit "C" is a true and correct copy of plaintiffs' complaint in litigation they filed against defendants in 2011 in the Clayton County Superior Court, Civil Action File No. 2011CV00832-6.  The 2011 Clayton County litigation centered on state law claims challenging the enactment and enforcement of the City's adult entertainment ordinance, but it also challenged the enactment and enforcement of the City's "alcohol code" (previously codified by the City at section 9-2-98 of its Code).  That litigation resulted in the Superior Court's dismissal of all of plaintiffs' claims on substantive grounds.  (See Exhibit "A" hereto.)  Plaintiffs have brought all of the same claims in this litigation, including those challenging enforcement of the "alcohol code." (Complaint, ¶¶ 82, 126-128, 179.)[7]  Defendants successfully argued in the prior litigation, and plaintiffs agreed at that time, that any claims relating to the enforcement of the alcohol code were

---

[7]     Plaintiffs also challenged the City's enforcement of its alcohol code in yet another separate lawsuit in the Clayton County Superior Court, Civil Action File No. 2011-CV-00151-6.  Plaintiffs dismissed that litigation without prejudice after defendants filed a motion to dismiss.  The Clayton County Superior Court ultimately assessed attorneys' fees and costs against plaintiffs for filing that lawsuit.  Attached hereto as Exhibit "C-1" are true and correct copies of the complaint, dismissal, and order awarding attorneys' fees and costs therein.

moot.  (Exhibit "A", pp. 16-19.)  Yet, forgetting their prior representations to the Clayton County Superior Court about the mootness of those claims, plaintiffs bring the same claims relating to the alcohol code in the instant action, requiring defendants to make the same mootness argument herein.

(e)    **2011 Certiorari Appeals**

In the instant action, plaintiffs also challenge the City's decisions in December of 2010 to non-renew the adult entertainment licenses for both clubs. (Complaint, ¶¶ 91, 103, 132, 143, 161, 180.)  However, the non-renewal of plaintiffs' adult entertainment licenses has been conclusively litigated between the parties in two prior certiorari appeals, Civil Action File Nos. 2011-CV-00464-6 and 2011-CV-00465-6, filed by plaintiffs in Clayton County Superior Court. (Attached hereto as Exhibit "D" are true and correct copies of the petitions for writ of certiorari in those certiorari cases, and the orders of the Clayton County Superior Court dismissing both appeals as untimely.)  In the instant motion, defendants seek dismissal of all challenges relating to the non-renewal of plaintiffs' adult entertainment licenses under the doctrine of *res judicata* because of the dismissal of plaintiffs' 2011 certiorari appeals.

**(f)**     **Existing Litigation Relating to Revocations and Non-Renewals**

The claims that have not been mentioned up to this point in reference to a previously filed law suit fall into two general categories: (1) those based upon the City's enactment by ordinance of grounds and procedures for revoking and non-renewing licenses (Complaint ¶¶ 81, 94, 106, 114, 119, 135, 146, 151, 164, 171, 175); and (2) those based on the revocation of their 2011 business and alcohol licenses and the non-renewal of their business licenses for 2012 (Complaint, ¶¶ 83, 84, 91, 94, 103, 106, 115-117, 126, 135, 146, 151, 164, 171, 177-178, 180-182.) All of these same claims are also currently pending before the Clayton County Superior Court in two separate lawsuits, and many of them were also the subject of a separate federal lawsuit filed by plaintiffs on November 17, 2011 (and subsequently voluntarily dismissed.)[8]

---

[8]  Attached hereto as Exhibit "E" are true and correct copies of the complaint and amended complaint, and the petition for writ of certiorari in Civil Action File Nos. 2011CV04302-6 and 2012CV00194-6 filed in the Clayton County Superior Court by plaintiffs in late 2011 and early 2012.  In the November 17, 2011 federal lawsuit, Civil Action File No. 1:11-CV-3951-CAP, United States District Judge Charles A. Pannell, Jr. denied plaintiffs' request for a temporary restraining order and preliminary injunction because of their failure to show a likelihood of success on the merits.  Plaintiffs subsequently voluntarily dismissed the litigation without prejudice.  Attached hereto as Exhibit "F" are true and correct copies of the complaint, dismissal, and Judge Pannell's order in that case.

### B.  Facts Related to the Current Litigation

Plaintiffs are the owners, operators, and landowners of two former adult entertainment establishments located in the City of Forest Park.  (Complaint ¶¶ 2-6, 16, 20.)  On March 23, 2009, the City revised its adult entertainment ordinance, so as to prohibit the sale or consumption of alcohol in adult entertainment establishments, and to prohibit private rooms or booths within such establishments. (Complaint, ¶ 33.)  In March of 2010, the City again substantially revised its adult entertainment ordinance by enacting ordinance No. 10-07.  (Complaint, ¶¶ 35-36.)

In December of 2010, the City denied 2011 adult entertainment licenses for the two clubs because both clubs contained private rooms or booths which the 2010 ordinance prohibited.  (Complaint, ¶ 38.)  Both clubs renewed their alcohol and their business licenses, and they continued to operate in the same manner except the dancers in the clubs ostensibly wore bikinis.  (Complaint, ¶ 38.) Nevertheless, the City continued to record violations of its ordinances and state laws, including fights and nude and sexual conduct within the clubs.  (Complaint, ¶¶ 39-40, 46.)

In May of 2011 the City amended its code to provide for a hearing procedure for the revocation of licenses within the City, such as business or alcohol licenses, upon a finding of illegal activity within business premises.  (Complaint, ¶¶ 47-48.)

-10-

Upon learning of the illegal activity within plaintiffs' clubs, the City scheduled a hearing to review plaintiffs' business and alcohol licenses, and the City Manager recused himself from those hearings due to numerous lawsuits that plaintiffs have filed against him.  (Complaint, ¶¶ 49-50.)

The appointed hearing officer, attorney T. Michael Martin, conducted the hearings relating to the revocation of the clubs' business and alcohol licenses on November 22 and 23, 2011.  On December 5, 2011, Mr. Martin issued decisions revoking the clubs' business and alcohol licenses due to numerous demonstrated instances of illegal conduct within the clubs.   (Complaint, ¶¶ 51-55, Ex. C.) Plaintiffs appealed their license revocations to Superior Court of Clayton County. (Complaint, ¶ 55, n. 3.)

On December 5, 2011, the City passed legislation allowing its finance director to refuse to renew business licenses if the applicant had its license suspended or revoked within the preceding 12 months, or if the finance director obtained evidence that the applicant allowed illegal activity at its premises. (Complaint, ¶ 58.)   Based upon this code section, the City's finance director refused to renew the clubs' business licenses for 2012.  (Complaint, ¶ 61, Ex. D.) The finance director based his decision on the failure of the clubs to pay outstanding taxes and evidence of violations of the City's ordinances.  (Id.)  The

clubs appealed to the City Manager, who affirmed the denial of the 2012 business licenses.  (Complaint, ¶¶ 67, 70, 73, Ex. F.)  Plaintiffs appealed the non-renewal decisions to Superior Court of Clayton County.  (Complaint, ¶ 73, n. 4.)  Following warning letters from the City, the clubs ceased operations on January 15, 2012. (Complaint, ¶ 75.)

## II.     ARGUMENT AND CITATION TO AUTHORITY

## A.   Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When the sufficiency of a complaint is challenged on a Rule 12(b)(6) motion to dismiss, the court considers whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

In the recent Iqbal decision, the Supreme Court emphasized that Fed. R. Civ. P. 8(a)(2) demands more from a plaintiff "than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  A complaint does not suffice if it tenders "naked assertions"

devoid of further factual enhancement, or if it offers labels and conclusions or a formulaic recitation of the elements of a cause of action.  Id.  The Supreme Court held that in order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  A claim is plausible on its face when it contains specific enough factual content to permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.** **Plaintiffs' Claims Relating to the City's Adult Entertainment Ordinance or Its Enforcement Are Barred by the Doctrine of Collateral Estoppel**

The Court should dismiss plaintiffs' claims relating to the City's adult entertainment ordinance (Complaint, ¶¶ 80, 81, 91, 103, 126, 127, 132, 143, 161, 175, 179) because plaintiffs are barred from asserting such claims based on the Eleventh Circuit's October 18, 2001 order and the order of the district court dated January 25, 2012.  See Exhibit "B".  In these orders, the courts declared that

plaintiffs lacked standing to assert these claims.[9]  This Court, based on collateral estoppel, must not permit plaintiffs to relitigate this standing decision.

Collateral estoppel precludes a plaintiff from re-litigating the same jurisdictional question after the first suit was dismissed for lack of federal jurisdiction, even though dismissal did not adjudicate the merits of the case.  See North Georgia Electric Membership Corp. v. City of Calhoun, 989 F.2d 429, 432-33 (11th Cir. 1993); Baris v. Sulpicio Lines, Inc., 74 F.3d 567, 571 (5th Cir. 1996); Jones v. Law Firm of Hill and Ponton, 141 F.Supp.2d 1349, 1356 (M.D. Fla. 2001).

In order for collateral estoppel to apply, the following four elements must be satisfied: (1) the issue at stake must be identical to the one involved in the prior litigation, (2) that issue must have been actually litigated in the prior litigation, (3) the determination of the issue in the prior litigation must have been necessary and essential to the judgment, and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.  Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998).

---

[9] Claims of a lack of standing are jurisdictional in nature.  CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257 1269 (11th Cir. 2006).  See, also, Exhibit "B" hereto, October 18, 2011 Eleventh Circuit order, p. 3.

This case presents a classic example of the application of collateral estoppel. All of the above-referenced four elements are satisfied.  The jurisdictional issue, the issue of standing, is exactly the same in this litigation as in the 2009 litigation. No facts have changed relating to the standing issue, nor have plaintiffs alleged any change in the factual status of the jurisdictional issue.  Therefore plaintiffs cannot have "corrected the deficiency" that led to a finding of a lack of jurisdiction in the 2009 litigation.  See North Georgia Electric Membership Corp., 989 F.2d at 433.  Indeed, in this case it is impossible for plaintiffs to retroactively correct any jurisdictional deficiency, because the deficiency amounted to much more than a pleadings issue.

The issue of standing was extensively litigated in the 2009 federal case, and was also central to the final judgment and resolution of the case.  Thus, the third element is satisfied.  Finally, plaintiffs had a full and fair opportunity to litigate the issue before both the District Court and Eleventh Circuit, satisfying the fourth element.  Therefore, all claims relating to the enactment and enforcement of the City's adult entertainment ordinance, particularly those in paragraphs 80, 81, 91, 103, 126, 127, 132, 143, 161, 175, and 179 of the complaint, are barred by the doctrine of collateral estoppel.

**C.**   **Plaintiffs' Claims Relating to the Non-Renewal of their Adult Entertainment Licenses are Barred by the Doctrine of *Res Judicata***

In their complaint, plaintiffs appear to assert claims under the federal and Georgia constitutions based upon the non-renewal of their adult entertainment licenses by the City in December of 2010.  In particular, plaintiffs claim violations of their substantive due process rights, a taking of their property without due process, and inverse condemnation.  (Complaint, ¶¶ 91, 103, 132, 143, 161.)  All of plaintiffs' claims relating to the non-renewal of their adult entertainment licenses have been previously litigated by plaintiffs in Clayton County Superior Court.  See Exhibit "D" hereto.   In the Clayton County litigation, the court dismissed plaintiffs' petitions for writ of certiorari because plaintiffs failed to timely file either case under Georgia's certiorari appeal statute.  See Exhibit "D".

"Under the federal full faith and credit statute, 28 U.S.C. § 1738, federal courts give preclusive effect to a state-court judgment whenever the courts of the state from which the judgment emerged would do the same."  Richardson v. Miller, 101 F.3d 665, 668 (11th Cir. 1996).  See also Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 80-85 (1984).  Under Georgia law, a plaintiff is generally prohibited from bringing separate, successive actions based upon the same set of operative facts.  "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in

issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." O.C.G.A. § 9-12-40.

### 1.  A Judgment of a Court of Competent Jurisdiction

Dismissal of the prior certiorari lawsuits based upon their failure to timely file them was an adjudication on the merits and there can be no argument that the Superior Court of Clayton County is a court of competent jurisdiction.  According to the Eleventh Circuit, a dismissal based upon the statute of limitations is a decision on the merits for *res judicata* purposes.  Wakefield v. Cordis, Corp., 304 Fed Appx. 804, 806 (11th Cir. 2008), (citing Mathis v. Laird, 457 F.2d 926, 927 (5th Cir. 1972)).  See, also Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499 (11th Cir. 1984) (holding that a change in the law applicable to the statute of limitations in the prior litigation does not stop *res judicata* from barring subsequent litigation, thus affirming that a decision based upon the statute of limitations triggers *res judicata* principles).  The 30-day filing period under the Georgia certiorari statute is the jurisdictional functional equivalent to the statute of

limitations because plaintiffs no longer possess those claims because of their failure to timely pursue them in superior court.[10]

### 2.  Same Parties or their Privies

The parties in this suit and the writ of certioraris are the same for purposes of res judicata.  Although only the City, its chief of police, and its police department were named in the certiorari lawsuits, plaintiffs primarily bring those same claims against the City herein.  (Complaint, ¶¶ 91, 103, 132, 143, 161.)  The parties to both the prior proceeding and the instant proceeding need not be identical in order to invoke *res judicata*.  In fact, *res judicata* applies to bar further claims by parties or their privies based upon the same cause of action.  <u>Montana v. United States</u>, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979).  Defendants who were not party to a prior suit can invoke *res judicata* if their liability was altogether dependent upon the culpability of the prior defendants.  <u>Lawlor v. National Screen Service Corp.</u>, 349 U.S. 322, 330, 75 S.Ct. 865, 869 (1955).  <u>See</u>, <u>also</u> <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 376, 113 S.Ct. 1471, 1487 (1993) (recognizing the general rule that judgment in an action against either party to a vicarious liability relationship establishes preclusion in favor of the other).

---

[10] O.C.G.A. § 5-4-6 (a) provides: "All writs of certiorari shall be applied for within 30 days after the final determination of the case in which the error is alleged to have been committed.  Applications made after 30 days are not timely and shall be dismissed by the court."

Here, the additional defendants named are privies of the City by virtue of their employment as elected officials or as city manager of the City. (Complaint ¶¶ 7-10.) Parties can be privies for purposes of *res judicata* when, as here, their interests are identical and they have a close relationship bordering on identity. See Daley v. Mariott Intern., Inc., 415 F.3d 889, 896-97 (8th Cir. 2005). Here, the Mayor, City Council, and City Manager have identical interests to the City and their close relationship borders on identity. Moreover, their liability is altogether dependent upon the culpability of the City. If the City did not violate plaintiffs' constitutional rights, its employees could not have done so by directing the actions of the City.

The plaintiffs in the two certioraris were also the same as the plaintiffs herein, except that the corporations owning the real property on which the clubs sit have also been added as plaintiffs herein. The shell corporations utilized solely to own the real property underlying the clubs are clearly privies of the other plaintiffs herein.

### 3. All Matters Which Were or Could Have Been Put In Issue

While plaintiffs did not ask for damages related to their constitutional claims in their writ of certioraris in the Superior Court, they could have, and, in fact, were

required to.[11]   In Georgia, a plaintiff cannot sue twice on the same set of facts because "one must assert all claims for relief concerning the same subject matter in one lawsuit and any claims for relief concerning that same subject matter which are not raised will be res judicata." Fowler v. Vineyard, 261 Ga. 454, 458, 405 S.E.2d 678, 682 (1991).  "Res judicata prevents plaintiffs from asserting claims arising from the same transaction piecemeal or presenting only a portion of the grounds on which relief is sought and leaving the rest for a second suit if the first fails." Mobley v. Sewell, 226 Ga. App. 866, 868, 487 S.E.2d 398, 400 (1997).

Res judicata applies "even if some new factual allegations have been made, some new relief has been requested, or a new defendant has been added." Dalton Paving & Const., Inc. v. South Green Const. of Georgia, Inc., 284 Ga. App. 506, 508, 643 S.E.2d 754, 756 (2007); see also Caswell v. Caswell, 162 Ga. App. 72, 290 S.E.2d 171 (1982) (holding that res judicata barred action predicated upon same operative facts even though three new defendants were added in subsequent action). See Sharpley v. Davis, 786 F.2d 1109 (11th Cir. 1986); Koziara & Seminole Entertainment, Inc. v. City of Casselberry, 239 F. Supp.2d 1245 (M.D. Fla. 2002).

---

[11] Plaintiffs asserted all of the same claims in the prior litigation, including substantive and procedural due process and inverse condemnation claims that they assert in this case in relation to the non-renewal of their adult entertainment licenses.  (See Exhibit "D" at ¶ 11.)

Federal law parallels Georgia law.  *Res judicata* in federal court bars the filing of claims which were raised or could have been raised in an earlier proceeding.  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).

**D.**   **Plaintiffs' Claims Relating to the Revocation of the Clubs' 2011 Business and Alcohol Licenses are Moot**

Plaintiffs' complaint is unclear as to whether plaintiffs base any independent cause of action upon the revocation of their 2011 business and alcohol pouring licenses, or whether their claims are solely related to the decision to non-renew their 2012 business licenses (based, in part, upon the findings in the earlier revocation hearing).  (Complaint, ¶¶ 114-117, 151, 171, 177.)  To the extent that plaintiffs state any claim based upon the revocation of the 2011 licenses, any such claim is moot because the 2011 licenses have expired, and plaintiffs suffered no damages because of the revocations because they were allowed to operate their businesses until after the 2011 licenses expired.

Mootness occurs when a plaintiff no longer has a legally cognizable interest in the outcome of a claim or claims.  City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 121 S. Ct. 743 (2001) (citing County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379 (1979)).  Here, plaintiffs no longer have any legally cognizable interest in any claim relating to the revocation of their 2011 licenses.

According to § 9-1-4 of the licensing ordinance, business licenses (or tax occupation certificates) are issued on an annual basis for a period from January 1 through December 31 of the year for which it is issued.  See Exhibit "G," which is a certified copy of the City's licensing ordinance § 9-1-4.   Indeed, plaintiffs' complaint also affirms that City business licenses must be renewed annually. (Complaint, ¶ 56.)   Because plaintiffs' 2011 business and alcohol licenses have expired by the terms of the City's ordinance, any claims plaintiffs might have based upon the revocation of the licenses are now moot.  See National Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Engineers, 574 F.Supp.2d 1314, 1320 (S.D. Fla. 2008) (expiration of Clean Water Act permit rendered moot environmental organization's claims for declaratory and injunctive relief under the Act) and cases cited therein; Sierra Club v. U.S. Environmental Protection Agency, 315 F.3d 1295, 1299-1301 (11th Cir. 2002) (EPA's subsequent approval of Georgia's state implementation plan mooted the challenge to the EPA's prior determination); Inserection v. City of Marietta, 278 Ga. 170, 171, 598 S.E.2d 452 (2004) (adult store's appeal of trial court's order enjoining store from operating became moot when store's business license expired at year's end); Kentucky Riverkeeper, Inc. v. Midkiff, 800 F.Supp.2d 846 (E.D. Ky. 2011) (affirming

general rule that expiration of   permit which forms basis of   claim generally renders claim moot).

Moreover, plaintiffs cannot claim damages for the time period between the revocation of their 2011 licenses and January 1, 2012 because their complaint clearly shows that they did not stop doing business until January 15, 2012. (Complaint, ¶ 75.)   Moreover, plaintiffs do not allege any element of damage attributable to the revocation of their 2011 licenses in their complaint.   Therefore, to the extent that plaintiffs plead such claims, they are moot.

### E.      Plaintiffs' Claims Relating to the Alcohol Code Are Also Moot

Plaintiffs base some of their claims on the enforcement of the City's "alcohol code," which was previously codified as § 9-2-98 of the Forest Park Code.   The Court should dismiss these claims because they are also moot. Plaintiffs do not allege any damages attributable to the alleged enforcement of the alcohol code, and they also seek no relief relating to the alcohol code.   (Complaint, pp. 45-46).

On May 16, 2011, the City repealed § 9-2-98 the alcohol code and replaced it with a public indecency ordinance.[12]   Thus, the alcohol code about which plaintiffs complain is no longer in force and cannot be enforced against plaintiffs

---

[12]   Attached hereto as Exhibit "H" is a certified copy of an ordinance of the City enacted.

even if the Court allows the clubs to reopen.  Any claims in plaintiffs' complaint relating to the enforcement of the alcohol code are thus moot under the authorities cited above.   To the extent that plaintiffs claim damages relating to the enforcement of the alcohol code, any such claims should be dismissed under <u>Iqbal</u> for failure to state them in the complaint.[13]

**F.**   **Plaintiffs Fail to State a Claim for Equal Protection Violations**

In Counts I and II of their complaint, plaintiffs allege that they have been denied their right to equal protection under the Fourteenth Amendment and corresponding provisions of the Georgia Constitution.  Plaintiffs include absolutely no factual allegations to support such a claim.[14]

---

[13]  It should also be noted that any "enforcement" of the alcohol code that occurred merely entailed citations issued to employees due to nudity and sexual conduct in the clubs following the non-renewal of the clubs' adult entertainment licenses. Plaintiffs cannot claim damages for citations issued to their employees due to the conduct of those employees.   Moreover, plaintiffs do not make any specific allegation as to what constituted "enforcement" of the alcohol code, thus triggering dismissal under <u>Iqbal</u>.

[14]  Plaintiffs' complaint asserts claims under both the U.S. and Georgia constitutions.  The guaranty of equal protection under Article I, § I, ¶ II of the Georgia Constitution, which requires that all persons shall be treated alike under like circumstances and conditions, <u>Rockdale County v. Burdette</u>, 278 Ga. 755, 756, 604 S.E.2d 820, 822 (2004), is coextensive with the federal equal protection guarantee.  <u>Ambles v. State</u>, 259 Ga. 406, 407, 383 S.E.2d 555, 557 (1989).

### 1.    No intentional discrimination

A plaintiff asserting an equal protection claim must show that he is either a member of a protected class or that the defendant intended to treat him differently from others similarly situated without a rational basis for the disparate treatment. See Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007).  Here, plaintiffs do not contend that they are in a protected class, therefore they must prove intentional discrimination.   City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 194, 123 S. Ct. 1389 (2003); Reno v. Bossier Parish Sch. Bd., 520 U.S. 471, 481 (1997); Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 241-42 (1976); Rozar v. Mullis, 85 F.3d 556, 564 (11th Cir. 1996); E & T Realty v. Strickland, 830 F.2d 1107, 1112 (11th Cir. 1987).  Plaintiffs must come forward with "at least some credible evidence that the actions of [the City of Forest Park] were motivated by racial animus or ill-will."   Grillo v. N.Y. City Transit Auth., 291 F.3d 231, 234 (2nd Cir. 2002); Henry Co. Homes, Inc. v. Curb, 548 F.Supp.2d 1281, 1291 (N.D. Fla. 2008).  Evidence of disparate treatment alone is insufficient to meet plaintiffs' burden. McCleskey v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756 (1987).

Plaintiffs do not include a single specific factual allegation in their complaint about intentional discriminatory conduct, but merely allege that they have been treated differently than <u>unnamed</u> comparators. Therefore, this claim fails as a matter of law. <u>Cf.</u> <u>Flowers v. City of Minneapolis, Minn.</u>, 558 F.3d 794, 799 (8th Cir. 2009) ("a reference to race made without a reflection of bias does not create a genuine issue of material fact on discriminatory intent."); <u>ReSource N.E. of Long Island, Inc. v. Town of Babylon</u>, 80 F.Supp.2d 52, 59 (E.D.N.Y. 2000) (allegations that defendants' actions done for purpose of aiding one bidding party over another belied element of equal protection claim that actions are done with deliberate purpose of injuring plaintiff). Plaintiffs have not sufficiently alleged intentional discrimination under <u>Iqbal</u>.

### 2.    No similarly situated comparator

In order to be successful, a class of one plaintiff must demonstrate an extremely high level of similarity between the plaintiff and the allegedly similarly situated comparators. <u>Campbell v. Rainbow City, Ala.</u>, 434 F.3d 1306, 1314 (11th Cir. 2006). The Eleventh Circuit requires that the plaintiff's and the proffered comparator's situations "be prima facie identical in all relevant respects." <u>Id.</u> "[D]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1109 (11th Cir.

1987).  Accord Griffin Industries v. Irvin, 496 F.3d 1189, 1207-08 (11th Cir. 2007).

In their complaint, plaintiffs do not identify any comparators by name or category.  See GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359 (11th Cir. 1998); Hayden v. Coppage, 533 F.Supp.2d 1186 (M.D. Ala. 2008). Therefore, plaintiffs' equal protection claim is not viable and the Court should dismiss it.

**G.    Plaintiffs' Fourteenth Amendment Substantive Due Process Claims are Unavailing**

**1.    Facts Make Out a Fifth Amendment Takings Claim and Not a Fourteenth Amendment Due Process Claim**

In asserting their Fourteenth Amendment Substantive Due Process Clause claim, plaintiffs claim that the City's conduct of applying newly passed ordinances to them "has taken all economic value from the Properties and the Businesses . . . ."  (Complaint ¶ 96.)  This statement puts plaintiffs' claims squarely within one of the three categories of Fifth Amendment Takings Clause claims, and outside of the Fourteenth Amendment.  Crown Point Dev., Inc. v. city of Sun Valley, 506 F.3d 851, 855 (5th Cir. 2007) (interpreting United States Supreme Court's decision in Lingle v Chevron U.S.A., Inc., 544 U.S. 528, 125 S. Ct. 2074 (2005)).   The Due Process Clause is not a "catch all" provision that creates a cause of action for any

abuse of government power.  Riley v. Camp, 130 F.3d 958, 974 (11th Cir. 1997).

Therefore, the Court must dismiss plaintiffs' substantive due process claim.

### 2.     No Fundamental Right or Property Interest

In Count I of their complaint, plaintiffs allege that they have fundamental

rights to use their properties as adult entertainment establishments, or alternatively

as commercial businesses in general.   The basis of this claim is that plaintiffs

allegedly have a vested right to use their properties for adult entertainment or

commercial uses and the City's actions of revoking or denying licenses are

infringing on this vested right.   (Complaint, ¶¶ 87-99.)   The Fourteenth

Amendment's Substantive Due Process Clause does not apply to these allegations.

The substantive component of the Due Process Clause of the Fourteenth

Amendment protects "only those rights that are 'fundamental,' that is, rights that

are 'implicit in the concept of ordered liberty.'"  McKinney v. Pate, 20 F.3d 1550,

1556 (11th Cir. 1994) (en banc), cert. denied, 513 U.S. 1110 (1995) (quoting Palko

v. State of Connecticut, 302 U.S. 319, 325 (1937), overruled on other grounds by

Benton v. Maryland, 395 U.S. 784 (1969)); see also Washington v. Glucksberg,

521 U.S. 702, 722 (1997) (holding that a plaintiff claiming deprivation of

substantive due process must demonstrate that it has been deprived of a

"fundamental" right created by the U.S. Constitution).  In general, "areas in which

substantive rights are created only by state law … are not subject to substantive due process protection … because 'substantive due process rights are created only by the Constitution.'"  McKinney, 20 F.3d at 1556 (quoting Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J. concurring).

Therefore, plaintiffs' federal substantive due process claims relating to the enforcement of the adult entertainment ordinance and the alcohol code, the revocation of their business and alcohol license, and the non-renewal of their adult entertainment, business, and alcohol licenses are all barred.

### 3.    No Vested Property Right to Operate an Adult Entertainment Club or Commercial Establishment

Contrary to plaintiffs' allegations, there is no state created property right to an adult entertainment license or right to operate a commercial establishment.  See Artistic Entertainment, Inc. v. City of Warner Robins, 134 Fed. Appx. 306, 2005 WL 1189627 (11th Cir. 2005) (alcohol license merely property interest created by state law and is not fundamental right); Cheek v. Gooch, 779 F.2d 1507, 1508 (11th Cir. 1986) (no protectable property interest in granting of alcohol license); Goldrush II v. City of Marietta, 267 Ga. 683, 695, 482 S.E.2d 347, 359 (1997) (no property interest in annual renewal of adult entertainment license.

Because there is no state created vested right to operate an adult entertainment establishment or a business in general, and because plaintiffs thus

have no state law property rights to adult entertainment or business license renewal, plaintiffs cannot utilize the substantive due process component of the Fourteenth Amendment to address their grievances.

## H.   Plaintiffs' State Substantive Due Process Claims are Unavailing

In Count II of their complaint, plaintiffs also allege substantive due process violations under the Georgia Constitution tied to the same alleged events: the non-renewal of their adult entertainment and revocation non-renewal of their business licenses.  Plaintiffs' state law substantive due process claims fare no better than their federal claim.

In order for the Court to analyze this claim, it is important to realize that plaintiffs have not pled a facial attack to the City's ordinances.  Rather, plaintiffs claim the ordinances are unconstitutional as applied to them because they had vested rights to operate under previous versions of these ordinances.

Where there is neither a suspect classification nor a fundamental right at stake, a rational relationship test is applied to determine whether the ordinance (or other government action) violates substantive due process or equal protection principles.  Glass Systems, Inc. v. Georgia Power Co., 288 Ga. 85, 86-87, 703 S.E.2d 605 (2010) (citing Old South Duck Tours v. Mayor and Aldermen of City of Savannah, 272 Ga. 869, 872; State v. Old South Amusements, Inc., 275 Ga. 274

(2), 564 S.E.2d 710 (2002); and <u>Love v. State</u>, 271 Ga. 398 (2), 517 S.E.2d 53 (1999)).

Here, there is neither a fundamental right nor a suspect classification at stake.  Although plaintiffs allege a fundamental right to property based upon their subjective expectation that they will be allowed to continue adult entertainment and business activity indefinitely, no such right exists under Georgia law.  Under the Georgia Supreme Court's decision in <u>Goldrush II v. City of Marietta</u>, 267 Ga. 683, 693, 482 S.E.2d 347 (1997), plaintiffs have no vested property right in the renewal of adult entertainment licenses or alcohol licenses that entitles them to due process of law.  Plaintiffs in this case cannot demonstrate the "legitimate claim of entitlement" to license renewal required under the <u>Goldrush II</u> decision because adult entertainment licenses and business licenses have always been granted on a yearly basis by the City, as is demonstrated by the allegations in the complaint.[15] (Complaint, ¶ 56.)  Moreover, this same logic applies to all types of licenses that require yearly renewal otherwise no such renewal would be necessary.  <u>See</u> <u>Artistic</u>

---

[15]  Plaintiffs should be acutely aware that they do not have substantive due process claims under Georgia law based upon the facts stated because the Clayton County Superior Court held in its October 12, 2011 order that plaintiffs have no such claims relating to the adult entertainment ordinance or the non-renewal of their adult entertainment licenses.  <u>See</u> Exhibit "A" hereto at pp. 7-8, 10-12.

Entertainment, Inc., supra; and Cheek v. Gooch, supra (no protectable property interest in granting of alcohol licenses).

Therefore, only a rational relationship test is required under state law.  The City easily passes this test as discussed above.  Plaintiffs make no allegation that the City's non-renewal decisions have no rational relationship to the City's legitimate governmental ends.  Therefore, plaintiffs fail to state a claim under Iqbal.  Moreover, Exhibit "G" clearly demonstrates the rational basis underlying the business license ordinance – avoiding criminal activity in businesses operating within corporate city limits.  The other exhibits attached to plaintiffs' complaint, including the hearing officer's decisions and the transcripts, show that the City's non-renewal of plaintiffs' business licenses was rationally related to the City's finding of illegal activity in plaintiffs' businesses, the same rationale supported by its business license ordinance, and its' finding that plaintiffs had not timely paid their occupation tax.  See Lanierland Distributors, Inc. v. Strickland, 544 F.Supp. 747, 751-52 (N.D. Ga. 1982) (Georgia identification and registration regulations relating to granting of licenses to beer importers met the rational relationship test).  Plaintiffs have not stated a substantive due process claim under state law.

## I.   Plaintiffs' Takings Claims are Improper

Plaintiffs' complaint includes "takings" claims in Counts I and II, and an overlapping separate inverse condemnation claim in Count III.   (Complaint, ¶¶ 100-112, 140-149, and 156-168.)   These claims appear to again challenge the enactment of the City's adult entertainment and business license ordinances, and the decisions to non-renew the clubs' adult entertainment and business licenses under the Fifth Amendment to the U.S. Constitution (Count I) and Art. I, Sec. III, Para I of the Georgia Constitution (Counts II and III).  These claims are not viable.

### 1.   The Fifth Amendment Takings Claim is Barred by Res Judicata

Plaintiffs admit in their complaint that they sought relief for their takings claims in the Georgia courts but were denied.  (Complaint, ¶ 109, n. 6.)  Plaintiffs cite to <u>Galardi v. City of Forest Park</u>, Civil Action No. 2011-CV-00832-6.  A copy of the Superior Court's order in that action is attached hereto as Exhibit "A."  The Superior Court's dismissal of plaintiffs' takings claim can be found on page 10 of that order.  What dooms plaintiffs' Fifth Amendment takings claim is two-fold. First, the standard the Superior Court applied is identical to that this Court must apply for the Fifth Amendment.  Therefore, the issue has actually been raised and determined against plaintiffs' position.  Second, plaintiffs could have, but chose

not to assert their Fifth Amendment claim in that action.[16]  Plaintiffs cannot split their claims related to the same cause of action.

As discussed above, this Court must give preclusive effect to any judgment that Georgia courts would recognize as doing so.  Hurt v. Pullman, Inc., 764 F.2d 1443, 1447 (11th Cir. 1985) (quoting Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 81 (1984)).  "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."  O.C.G.A. § 9-12-40.

Plaintiffs were required to litigate their claim for a Fifth Amendment taking in the prior action if they intended to pursue the claim.  A plaintiff cannot litigate one claim to conclusion, only to save others for a subsequent lawsuit.  Mahan v. Watkins, 256 Ga. App. 260, 261, 568 S.E.2d 130, 131 (2002).  While a plaintiff need not join unrelated claims, "a plaintiff must bring every claim for relief he has concerning the same subject matter in one lawsuit."  Lawson v. Watkins, 261 Ga.

---

[16] It is possible that plaintiffs could have made a "Jennings reservation" in the Superior Court action instead of bringing the Fifth Amendment takings claim.  See Agripost, LLC v. Miami-Dade County, FL, 525 F.3d 1049, 1052-55 (11th Cir. 2008).  They did not even attempt to preserve their Fifth Amendment claim, so the Court need not concern itself over the question of whether Jennings reservations remain viable.

147, 149-50, 401 S.E.2d 719, 721-22 (1991); Fowler v. Vineyard, 261 Ga. 454, 458, 405 S.E.2d 678, 682 (1991).

Courts require three things before *res judicata* will apply:  (1) identity of the cause of action; (2) identity of the parties or their privies; and (3) previous adjudication on the merits by a court of competent jurisdiction.   Waldroup v. Greene County Hosp. Auth., 265 Ga. 864, 866, 463 S.E.2d 5, 7 (1995).

The cause of action in this Court obviously is identical to that of Superior Court.  "A cause of action has been defined as being the *entire* set of facts which give rise to an enforceable claim."  Haley v. Regions Bank, 277 Ga. 85, 91, 586 S.E.2d 633, 638 (2003) (citations and punctuation omitted).  It is "not defined by the legal theory, procedural mechanism, or remedy which is employed."  Id. Plaintiffs as much as admit the identity of the causes of action by citing to the Superior Court action as fulfillment of its Williamson-ripeness requirement (See below.)  The fact that plaintiffs assert a different claim based on the same facts of the Superior Court case is irrelevant.  Furthermore, as discussed above, there is no question as to the second and third elements of res judicata.

Therefore, res judicata bars this Fifth Amendment claim, unless and until the Georgia Court of Appeals overturns the Superior Court's order.

**2.      Fifth Amendment Takings Claims Are Barred by the Existence of a State Remedy**

Alternatively, because plaintiffs failed to successfully utilize the Georgia provision for obtaining just compensation, any Fifth Amendment takings claims asserted in their complaint are not ripe.  <u>Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 193-97, 105 S. Ct. 3108, 3120-22 (1985); <u>BFI Waste System of North America v. DeKalb County</u>, 303 F.Supp.2d 1335, 1347 (N.D. Ga. 2004).  The Fifth Amendment does not prohibit <u>all</u> takings of property; rather it prohibits only takings of property <u>without just compensation</u>.  All that the amendment requires is that a "'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." <u>Williamson</u>, 473 U.S. at 194, 105 S. Ct. at 3120 (quoting <u>Blanchette v. Connecticut General Ins. Corporations</u>, 419 U.S. 102, 124-125, 95 S. Ct. 335, 349 (1974)) (internal quotation marks omitted.)

If an adequate process for obtaining compensation exists and if proper utilization of that process will yield just compensation, then the property owner cannot maintain a Fifth Amendment claim.  <u>Williamson</u>, 473 U.S. at 194, 105 S. Ct. at 3121.  Therefore, the government's action is not "complete" in the sense of causing a constitutional injury, until the government fails to provide adequate post-

deprivation compensation for the property loss.  <u>Reahard v. Lee County</u>, 30 F.3d 1412, 1415-16 (11th Cir. 1994), <u>cert</u>. <u>den.</u>, 514 U.S. 1064, 115 S. Ct. 1693 (1995).

Here, it is beyond dispute that an adequate process exists under state law for the claims asserted in plaintiffs' complaint regarding a "taking" of their property. This procedure is to bring an inverse condemnation action or some other challenge to the City's ordinances.  <u>See</u> <u>Butler v. Gwinnett County</u>, 223 Ga. App. 703, 705, 479 S.E.2d 11 (1996).  Indeed, as discussed above plaintiffs allege that they have already utilized that process.  (Complaint, ¶ 109, n. 6.)  The fact that plaintiffs acknowledge that the procedure exists is sufficient to warrant dismissal of their Fifth Amendment takings claims.  On this basis alone, the Court should dismiss plaintiffs' takings claims.

Although plaintiffs contend that they were denied relief in state litigation, that allegation alone is insufficient reason to invoke the Fifth Amendment.  <u>Id.</u>  In the first place, the litigation upon which plaintiffs base their allegation that they have not been able to obtain relief is currently on appeal to the Georgia appellate courts.  Because of this fact, plaintiffs' claim is clearly not ripe for adjudication, even if they were correct on the law.  However, plaintiffs are incorrect on the law. The existence of a viable state remedy is sufficient to render plaintiffs' claims not viable.  Under Supreme Court precedent, an adequate process for obtaining

compensation is all that need be demonstrated if "resort to that process" will yield just compensation.  Williamson, 473 U.S. at 194, 105 S. Ct. at 3121.  At most, the allegation merely demonstrates that plaintiffs lost their case in Superior Court because their property was never taken as they allege or they failed to properly utilize the available process.  See Exhibit "A".

### 3.    Plaintiffs' Takings Claims are Barred Because Plaintiffs Have Not Been Deprived of All Use and Value of the Property

Even if their Fifth Amendment and state takings claims were ripe and not barred by res judicata, plaintiffs have not alleged that they have been deprived of all use of the subject property, or that they have been denied any economically viable use of the land.  In order to succeed in a takings claim where there has been no physical taking of property and no permanent invasion by government action, a plaintiff must generally show that the ordinance denies him economically viable use of the property.  Lingle v. Chevron, U.S.A., Inc., 544 U.S. 528, 538-40, 125 S. Ct. 2074 (2005); Greater Atlanta Homebuilders Ass'n. v. DeKalb County, 277 Ga. 295, 297, 588 S.E.2d 694 (2003).  Courts generally conclude that so long as an ordinance allows some permissible use, a party will not be able to satisfy its burden of showing a complete lack of economically viable use.  See Hodel v. Va. Surface Mining and Reclamation Assn., 452 U.S. 264, 296, 101 S. Ct. 2352 (1981); Rolleston v. State of Ga., 245 Ga. 576, 579-80, 266 S.E.2d 189 (1980) (land use

regulation does not amount to a taking where owner "is not entirely deprived of the value and practical use of his property"); Dover v. City of Jackson, 246 Ga. App. 524, 541 S.E.2d 92 (2000).

An adult entertainment establishment made the same takings argument plaintiffs herein are making and lost, albeit only under the Fifth Amendment to the U.S. Constitution, in Centerfold Club, Inc. v. City of St. Petersburg, 969 F. Supp. 1288, 1307-08 (M.D. Fla. 1997). Citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014-16, 112 S. Ct. 2886 (1992) for the proposition that a taking or condemnation occurs only where a landowner has been denied all economically beneficial or productive use of the property, the court in Centerfold Club rejected the club's claim that a taking occurred because the landowner's chosen use of the property was no longer possible. Id. Because plaintiffs cannot allege that the City's adult entertainment and business license ordinances, or the decisions to non-renew their licenses, deprived them of the economic use of the property, the Court should dismiss their takings claims.[17]

---

[17] Plaintiffs do make the allegation in ¶¶ 110, 148, and 166 of their complaint that the City deprived them of all economic value of their property "[b]y passing law after law targeted at shutting down the Businesses". To the extent that these allegations relate to plaintiffs' real property, these allegations fare no better than those in Centerfold Club, discussed above. To the extent that plaintiffs claim that a portion of their real property has lost all value, their claims are barred by the decisions of the U.S. Supreme Court in Penn Central Transportation Co. v. City of

**J.**     **Plaintiffs Have Failed to State a Federal Procedural Due Process Claim**

In Count I of their complaint, plaintiffs allege federal procedural due process violations relating to the non-renewal of their business licenses. (Complaint, ¶¶ 113-122.) Plaintiffs' complaint is missing essential elements of this claim.

In order to establish a procedural due process claim under federal law, plaintiffs must establish three elements: (1) deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. Foxy Lady, Inc. v. City of Atlanta, Ga., 347 F.3d 1232, 1236 (11th Cir. 2003). Plaintiffs' claims fall short on the first and third elements. First, plaintiffs have not established a property interest in the renewal of their business

---

New York, 438 U.S. 104, 130, 98 S. Ct. 2646, 2662 (1978) and Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 107 S. Ct. 1232 (1987).

Plaintiffs cannot claim that their property rights in their businesses have lost all economic value because under the above-referenced case law, including the Goldrush II decision, plaintiffs have no property rights to adult entertainment or commercial activity. It should also be noted that plaintiffs have not alleged in their complaint that the actions of the City have precluded all commercial business activity on either site. If plaintiffs filed business license applications to engage in non-explicit business activity on either site, their applications might be granted by the City. Moreover, the exhibits attached to plaintiffs' complaint belie their allegations by showing that plaintiffs' own criminal conduct, rather than any improper acts by defendants, caused the revocation of plaintiffs' business licenses. Plaintiffs' allegations in paragraphs ¶¶ 110, 148, and 166 are shown to be untrue by the exhibits attached to their own complaint.

Finally, plaintiffs do not allege that their property was deprived of all economic value by any specific act of defendants. Their allegation that by "passing law after law" defendants deprived them of all economic value of their property is insufficiently pled to pass muster under Iqbal.

licenses.  An applicant for a business license simply does not have a property interest in the license sought.  10950 Retail, LLC v. City of Johns Creek, 299 Ga. App. 458, 461, 682 S.E.2d 637 (2009); Goldrush II v. City of Marietta, 267 Ga. 683, 695-98, 482 S.E.2d 347, 358-61 (1997).

Second, plaintiffs cannot demonstrate that the state failed to provide an adequate remedy for any alleged procedural error because they have not alleged that the State of Georgia failed to make adequate process available to them.  The law is well established that a deprivation of property without adequate procedural protections does not result in a procedural due process violation unless the state "refuses to make available a means to remedy the deprivation." McKinney v. Pate, 20 F.3d 1550, 1563 (11th Cir. 1994(en banc), cert denied, 513 U.S. 1110 (1995). To the contrary, plaintiffs clearly claim that the state made sufficient process available to them, and that they are currently making use of that process. (Complaint, ¶ 73, n. 4.)

Finally, even if a property interest existed and the state had not provided an adequate procedural remedy, plaintiffs have not established that any of the alleged "violations" that they list in their complaint are sufficient to render the City's process constitutionally inadequate.  Due process requires simply notice and an opportunity to be heard.  Reams v. Irvin, 561 F.3d 1258, 1263 (11th Cir. 2009).

The complaint and the exhibits thereto affirmatively demonstrate that plaintiffs were provided ample notice of the City's actions and extensive opportunities to be heard.  To the extent that plaintiffs allege that any of the technicalities that they list are sufficient to render the entire process constitutionally inadequate, it will be incumbent upon them to show authorities that support their position.  They cannot do so.

For the three reasons listed above, the Court should dismiss plaintiffs' federal procedural due process claims.

## K.   Plaintiffs Have No State Law Claim for Procedural Due Process Violations

Plaintiffs allege corresponding procedural due process violations under the Georgia Constitution in Count II of their complaint.   (Complaint, ¶¶ 150-155.) Plaintiffs' state procedural due process claims also are not viable.[18]

Georgia law does provide due process protections for the deprivation of property rights.  Sikes v. Pierce, 212 Ga. 567, 94 S.E.2d 427 (1956).  However, under Georgia law due process protections occur only where one's property rights are involved.  Hamilton v. Edwards, 245 Ga. 810, 811, 267 S.E.2d 246 (1980); Sikes v. Pierce, 212 Ga. 567, 568, 94 S.E.2d 427 (1956).  Plaintiffs again have not

---

[18]   Indeed, plaintiffs are currently litigating all of the listed alleged procedural "errors" before the Clayton County Superior Court.  See Exhibit "E", petitions for writ of certiorari.

demonstrated that they have been deprived of any property under Georgia law by the non-renewal of their yearly business license.  See 10950 Retail, LLC v. City of Johns Creek, 299 Ga. App. 458, 461, 682 S.E.2d 637 (2009); Goldrush II v. City of Marietta, 267 Ga. 683, 695-98, 482 S.E.2d 347, 358-61 (1997); Artistic Entertainment, Inc. v. City of Warner Robins, 134 Fed. Appx. 306, 2005 WL 1189627 (11th Cir. 2005); Cheek v. Gooch, 779 F.2d 1507, 1508 (11th Cir. 1986); Recycle and Recover v. Ga. Bd. of Nat. Resources, 266 Ga. 253, 466 S.E.2d 197 (1996).

Because plaintiffs have not sufficiently alleged any property rights to their business licenses, they are not entitled to procedural due process rights.  To the extent that plaintiffs have failed to allege the deprivation of any property right their procedural due process allegations are also plainly insufficient under Iqbal.

Moreover, Georgia law merely requires notice and an opportunity to be heard.  Keenan v. Hardison, 245 Ga. 599, 266 S.E.2d 205 (1980).  As plaintiffs' complaint and the exhibits thereto plainly demonstrate, plaintiffs were provided with extensive notice and opportunity to be heard by the City as to the non-renewal of their business licenses.  All of the allegations in plaintiffs' complaint center on technicalities, none of which are sufficient to show a lack of notice or opportunity to be heard.  Plaintiff has simply failed to allege sufficient facts to give rise to a

claim for a procedural due process violation under Georgia law.  See Stephens v. City of Ellijay, 171 Ga. 612, 156 S.E. 253 (1930) (holding that plaintiff's due process claim lost all of its force when plaintiff admitted that he had a hearing that complied with state law).

Plaintiffs' procedural due process claims under state law are not supported by law or fact.  Therefore, the Court should dismiss them in their entirety.

**L.     Plaintiffs Have Failed to State a Declaratory Judgment Claim in Count IV of their Complaint**

In Count IV of their, plaintiffs attempt to state a claim for declaratory judgment.  Plaintiffs merely claim that there is "an actual controversy between Plaintiffs and the City concerning the validity of the City's non-renewal of the Business Licenses."  Plaintiffs provide no factual underpinnings for their allegation of an "actual controversy," and make no allegation showing that any of the claimed "errors" in the hearing process gives them a cause of action.  In short, plaintiffs' attempt at stating a declaratory judgment claim does nothing more than parrot the alleged "errors" that plaintiffs are currently pursuing in their current certiorari appeal in Clayton County Superior Court.  See Exhibit "E", petition for writ of certiorari, ¶ 71.

Plaintiffs' declaratory judgment claims are not viable because the rights of the parties have already accrued, and an action for declaratory judgment will not

lie in such an instance.  Kiker v. Hefner, 119 Ga. App. 629, 168 S.E.2d 637 (1969).

In other words, where a petition for declaratory judgment shows that the rights of

the parties have already accrued, and no facts or circumstances are alleged which

show the necessity for a determination of any dispute to guide and protect the

petitioner from uncertainty and insecurity with respect to the propriety of some

future act or conduct, which future action without direction would jeopardize their

interest, the petition fails to state a cause of action for declaratory judgment.

Holcomb v. Bivens, 103 Ga. App. 86, 118 S.E.2d 840 (1961).  In order to obtain a

declaratory judgment, a plaintiff must show that he is in a position of uncertainty

or insecurity because of a dispute and because of having to take some future action

which is properly incident to his alleged right, and which future action without

direction from the court might reasonably jeopardize his interest.  Head v. DeKalb

County, 246 Ga. App. 756, 760, 542 S.E.2d 176 (2000); Hollberg v. Spalding

County, 281 Ga. App. 768, 770-71, 637 S.E.2d 163 (2006).

Federal law parallels Georgia law on this point.  In order to demonstrate that

a case or controversy exists to meet the Article III standing requirement when a

plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts

from which it appears there is a substantial likelihood that he will suffer injury in

the future.  City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660 (1983);

Cone Corp. v. Florida Dept. of Transp., 921 F.2d 1190, 1205 (11th Cir. 1991).

Based on the facts alleged, there must be a substantial and continuing controversy

between two adverse parties.  Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir.

1985).  The plaintiff must allege facts from which the continuation of the dispute

may be reasonably inferred.  Id.  Additionally, the continuing controversy may not

be conjectural, hypothetical, or contingent; it must be real and immediate, and

create a definite, rather than speculative, threat of future injury.  Id.

Plaintiffs herein have made no allegation that they must take any future

action or face any uncertainty relating to that action.  Moreover, any dispute is

merely hypothetical and conjectural, given that the same claims are currently

before the Superior Court.  If the Superior Court grants certiorari and gives

plaintiffs their 2012 business licenses, there will be no need for declaratory

judgment herein.  Moreover, if the Superior Court affirms the non-renewals of the

licenses, and if the decision is upheld on appeal, any procedural due process claim

herein, including any declaratory judgment claim, will be barred by *res judicata*.

Plaintiffs' rights have fully accrued and are being fully adjudicated by the Clayton

County Superior Court.  Count IV should therefore be dismissed for failure to state

a claim.

**M.**   **Plaintiffs' Claims Against the Individual Defendants Are Not Viable**

In Count V of their complaint, plaintiffs express numerous claims against the individual defendants based upon various different facts.  O.C.G.A. § 36-33-4 provides:

> Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law.

O.C.G.A. § 36-33-4.   In order to premise liability upon O.C.G.A. § 36-33-4, plaintiffs must satisfy two conditions: defendants must have acted contrary to a nondiscretionary ministerial duty, and defendants must have acted with malice. City of Hawkinsville v. Wilson & Wilson, Inc., 231 Ga. 110, 200 S.E.2d 262 (1973).

Here, plaintiffs have not shown that defendants acted contrary to a nondiscretionary ministerial duty.   In fact, all of the acts of which plaintiffs complain are clearly discretionary.  Moreover, plaintiffs have insufficiently alleged malice under the standards enunciated in Iqbal.   Plaintiffs merely parrot the statute's language without any factual underpinning whatsoever.   As such, plaintiffs' allegations amount to "naked assertions" devoid of further factual enhancement, or mere labels and conclusions or a formulaic recitation of the elements of a cause of action.  In Iqbal, the Supreme Court specifically held this

style of pleading to be insufficient to state a claim, as discussed above.  Finally, as to the claims put forth in paragraph 179 of the complaint relating to the enforcement of the ordinances, plaintiffs have failed to allege malice at all, rendering their claim obviously insufficient under Iqbal.

Plaintiffs' claims against the individual defendants are also barred by all of the defenses espoused herein.  All of the defenses discussed above also apply to the claims against the individual capacity defendants, much as they do to claims against the City, because the claims in Count V are all premised upon roles the individual defendants may have had in the City's actions allegedly giving rise to plaintiffs' other claims.  (Complaint, ¶¶ 175-81.)  All of the claims in Count V relate to the enactment of the adult entertainment and business license ordinances, the revocation of plaintiffs' business licenses, the non-renewal of plaintiffs' business licenses, and the enforcement of the adult entertainment ordinance and alcohol code.  (Id.)  Thus, they should be dismissed for the reasons discussed above.

The Court should dismiss all claims in this case directed towards the individual defendants.

**N.**   **The Individual Defendants are Entitled to Legislative Immunity**

As to the claims against the individual defendants in Count V of the complaint, if all of the above-referenced claims are dismissed by the Court, all of the "derivative" claims alleged by plaintiffs in Count V should also be dismissed. However, the individual defendants also possess numerous immunities which shield them from liability in this case, and warrant dismissal of those claims as a matter of law.

First of all, the individual defendants who allegedly participated in the vote to adopt the City's adult entertainment and business license ordinances as alleged in ¶¶ 175-76 of plaintiffs' complaint are entitled to legislative immunity and the Court should dismiss all claims against them on this basis alone.  It is black letter law that state and local legislators are entitled to absolute legislative immunity as to both federal and state law claims brought against them as a result of a legislative function.  See Brown v. Crawford County, Ga., 960 F.2d 1002, 1011-12 (11th Cir. 1992).  The rationale for according absolute immunity to local legislators is premised on the belief that legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability.   Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S. Ct. 966, 970 (1998).

In addition to the separation of powers doctrine, the Supreme Court provides additional reasoning for legislative immunity:

> the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. [cits.] And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability.

Id. at 45. Brown v. Crawford County, Ga., 960 F.2d 1002, 1011-12 (11th Cir. 1992); Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1409 (11th Cir. 1989); Fulton County v. Dangerfield, 260 Ga. 665, 398 S.E.2d 14, 15 (1990).

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan, 523 U.S. at 54, 118 S. Ct. 966 at 972 (quoting Tenney v. Brandhove, 341 U.S. 367, 376, 71 S. Ct. 783, 788 (1951)). Absolute legislative immunity includes not only protection from money damages, but also "the general costs of subjecting officials to the risks of trial -- distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982)). "[E]ven such

pretrial matters as discovery are to be avoided if possible, as 'inquiries of this kind can be peculiarly disruptive of effective government.'" Id.

The enactment of an adult entertainment ordinance and the amendments to the City's business license ordinance are clearly legislative actions under the definitions applicable to this type of immunity, and each individual elected official who participated in the enactment of the ordinance participated in legislative action.[19]  Courts throughout the nation have interpreted and applied the doctrine of legislative immunity not only to bar testimony in challenges to adult entertainment ordinances, but also to require dismissal of all claims against legislators in their individual capacities.  See D.H.L. Associates, Inc. v. O'Gorman, 6 F.Supp.2d 70 (D. Mass. 1998); Cathy's Tap, Inc. v. Vill. of Mapleton, 65 F. Supp. 2d 874 (C.D. Ill. 1999); and Ways v. City of Lincoln, 2002 WL 87068 (D. Neb. 2002).[20]

Plaintiffs cannot get around legislative immunity by alleging that the individual defendants acted oppressively, maliciously, corruptly, or without

---

[19]  Defendant Parker did not participate in the enactment of the ordinances at issue however, to the extent that plaintiffs allege that he had some role therein, he should be likewise entitled to derivative legislative immunity.  See Bryant v. Jones, 575 F.3d 1281, 1304-07 (11th Cir. 2009).

[20]  Indeed, these cases demonstrate that following the decision of the U.S. Supreme Court in Bogan, supra, there are few, if any, instances in which legislators can be sued individually for their clearly legislative acts in creating and enacting ordinances.

authority of law.  O.C.G.A. § 36-33-4 is not a waiver of legislative immunity, and plaintiffs cannot plead their way around legislative immunity.  If so, the whole purpose of legislative immunity would be circumvented.  The Court should dismiss all claims against the individual defendants based upon legislative immunity.

**O.**     **The Individual Defendants Possess Qualified Immunity**

Even if plaintiffs could maintain their federal claims against the individual defendants under the substantive law, those federal claims are nevertheless subject to dismissal on the basis of qualified immunity.  Government officials and employees are entitled to qualified immunity from damages claims under 42 U.S.C. § 1983 for their actions within the scope of their official duties.  Qualified immunity offers complete protection for government officials sued in their individual capacities, and an official will be stripped of his qualified immunity only when his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

For a constitutional right to be "clearly established" for qualified immunity purposes, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  In the light of pre-existing law,

the unlawfulness must be apparent.  Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508 (2002).  The salient question is whether the state of the law at the time gave officials fair warning that their conduct was unconstitutional.  Hope, 536 U.S. at 741.

The qualified immunity analysis involves three steps.  Tinker v. Beasley, 429 F.3d 1324, 1326 (11th Cir. 2005).  In the first step, the public official must prove that the alleged wrongful acts were taken within the scope of his discretionary authority.  Id.  Actions are within the scope of an official's discretionary authority if the actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority.  Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998).  Based upon the allegations of plaintiffs' complaint, this first step of the qualified immunity analysis is clearly satisfied as to the defendants' involvement with all of the acts about which plaintiffs complain.  (Complaint, ¶¶ 175-81.)

Once the official makes the showing required in step one, the burden then shifts to the plaintiff to demonstrate that the official's conduct violated a constitutional right.  Harbert, 157 F.3d at 1282; Vinyard, 311 F.3d at 1346.  If the plaintiff establishes a constitutional violation, then in the third and final step he

must demonstrate that the constitutional right was clearly established at the time of the alleged violation.  Tinker, 429 F.3d at 1326; Vinyard, 311 F.3d at 1346.

Plaintiffs' allegations in this case fail both the second and third steps of the qualified immunity analysis because the factual allegations of plaintiffs' complaint simply do not support the finding of constitutional violations by any of the individual defendants under the U.S. Constitution as detailed above.  Plaintiffs have pled insufficient facts to show that any of the individual defendants did anything that damaged them, and allege only that the individual defendants enacted ordinances and took steps to enforce them.  Under the facts pled by plaintiffs, a reasonable public official would have believed that the enactment of the City's ordinances and the enforcement thereof was legitimate and legal.

Plaintiffs' allegations against the individual defendants amount to nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" which are inadequate to state a cause of action, even without considering qualified immunity.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  As to claims to which qualified immunity applies, plaintiffs' failure to plead any specific facts is fatal to those claims.  See Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010) (district courts should start by weeding out conclusory allegations that are not entitled to a presumption of truth, as well as

legal conclusions, assume that **well pleaded** factual allegations are true, and then determine whether they plausibly give rise to entitlement to relief against individual defendants in qualified immunity cases) (emphasis added).

Plaintiffs have satisfied neither step two nor step three of the qualified immunity analysis.  Thus, the individual defendants are entitled to qualified immunity as to any damages claims under the U.S. Constitution.

**P.  The Individual Defendants Possess Official Immunity as to Plaintiffs' State Law Claims**

The doctrine of official immunity provides that, while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority.  Schulze v. DeKalb County, 230 Ga. App. 305, 307-308, 496 S.E.2d 273 (1998).  A ministerial act is "simple, absolute, and definite" and requires that the actor merely exercise a specific duty.  Johnson v. Gonzalez, 223 Ga. App. 646, 647, 478 S.E.2d 410 (1996).  A discretionary act, on the other hand, "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."  Id.

Official immunity may only be stripped if an official's discretionary actions were willful, wanton, or done with the actual intent to cause injury.  Schulze, 230

Ga. App. at 307-08; Merrow v. Hawkins, 266 Ga. 390, 391, 467 S.E.2d 336, 338 (1996).   The individual defendants clearly acted within the scope of their discretionary authority when they enacted the City's adult entertainment ordinance and business license ordinance amendments and went about enforcing the ordinances.   Therefore, the individual defendants in this case can only be held liable for damages under Counts II, III, and V (including all state constitutional theories of liability in the complaint) if they acted with actual intent to injure plaintiffs.  Merrow, 266 Ga. at 391.

The complaint is devoid of even an allegation that any of the individual defendants acted with an actual intent to injure plaintiffs in this case, and the exhibits thereto clearly show that defendants did not act with intent to injure plaintiffs.  Consequently, the Court should dismiss any and all state law damages claims in plaintiffs' complaint, including those in Counts II, III, and V, against the individual capacity defendants based on the doctrine of official immunity.

Q.    **The Individual Defendants Possess Statutory Immunity**

The Court should dismiss the elected officials named as defendants for the additional reason that they are entitled to immunity under O.C.G.A. § 51-1-20(a), which provides as follows:

> A person serving with or without compensation as a
> member, director, or trustee, or as an officer of the board

> without compensation, of any nonprofit hospital or association or of any nonprofit, charitable, or eleemosynary institution or organization or of any local governmental agency, board, authority, or entity shall be immune from civil liability for any act or any omission to act arising out of such service if such person was acting in good faith within the scope of his or her official actions and duties and unless the damage or injury was caused by the willful or wanton misconduct of such person.

This statutory immunity protects the individual capacity defendants from liability for damages as to the state law and state constitutional claims.  Unlike official immunity, the statutory immunity provided to local government officials applies regardless of whether the nature of the person's actions at issue was ministerial or discretionary.  Atlanta Airmotive, Inc. v. Royal, 214 Ga. App. 760, 761, 449 S.E.2d 315 (1994).

There can be no dispute here that the individual defendants were acting within their service as elected officials or as city manager when they enacted the City's ordinances and enforced them.  Plaintiffs have alleged no facts that would pull any actions of the individual defendants outside of the protections of their statutory immunity under O.C.G.A. § 51-1-20(a).  Under Iqbal, supra, plaintiffs must make specific factual allegations, however in this case plaintiffs have made only conclusory statements which should be disregarded in analyzing the factual sufficiency of the complaint.  Randall v. Scott, supra.  It is clear from the well

pleaded allegations in the complaint, and the exhibits thereto, that the individual defendants acted in good faith within the parameters of their public offices, and were not guilty of willful or wanton misconduct.  Therefore, all state law claims against the individual defendants, including those in Counts II, III, and V should be dismissed by the Court.

**R.     The Court Should Dismiss All Claims Against Any Official Capacity Defendant**

It is well settled that an "official capacity" suit against a public official is the same as a suit against the governmental entity itself.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Indeed, the Eleventh Circuit has recognized that official capacity claims against local government officials are superfluous and should be dismissed where, as here, the government itself is a party to the lawsuit.  Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).  One district court has suggested that such claims should be stricken as redundant under Rule 12(f), and that federal courts have the power to strike those claims even absent a motion. McCleskey v. City of Dothan, 2009 WL 1258290 (M.D. Ala. 2009).

Plaintiffs' complaint also names the individual defendants in their official capacities.  Under the authority of Busby, and in light of the plaintiffs' inclusion of the City of Forest Park as a defendant herein, all official capacity claims against

defendants Deyton, Adams, McCord, Lord, and Parker should be dismissed with prejudice.

### III.   CONCLUSION

For all of the reasons discussed herein, defendants respectfully request that the Court dismiss the claims against them in toto.

Respectfully submitted this 19th day of March, 2012.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No.
dmaine@fmglaw.com

*/s/ William J. Linkous, III*
William J. Linkous, III
Georgia Bar No. 453213
blinkous@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

[Signatures continued on following page.]

**MACK & HARRIS, P.C.**

Robert L. Mack, Jr.
Georgia Bar No. 463861
rlmack@mackandharris.com
Joe M. Harris, Jr.
Georgia Bar No. 330400
jharris@mackandharris.com

205 Corporate Center Drive
Suite B
Stockbridge, Georgia 30281
(678) 610-8155 (telephone)
(678) 610-8153 (facsimile)          Attorneys for Defendants
00090386.DOC

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

This 19th day of March, 2012.

*/s/ Dana K. Maine*

Dana K. Maine

Ga. Bar No. 466580

dmaine@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**

**TO DISMISS**

Simon H. Bloom
Stephanie A Everett
Sherri G. Buda
THE BLOOM LAW FIRM, LLP
977 Ponce de Leon Ave. NE
Atlanta, Georgia 30306

This 19th day of March, 2012.

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No.
dmaine@fmglaw.com

Attorney for Defendants

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)