# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JACK GALARDI, RED EYED, INC. d/b/a CRAZY HORSE SALOON, WALLEYE, LLC, MIA LUNA, INC. d/b/a PINK PONY SOUTH, and JGP&P, LLC<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF FOREST PARK, CORINE DEYTON, SPARKLE ADAMS, MAUDIE McCORD, LINDA LORD, and JOHN PARKER, individually,<br><br>                  Defendants. | CIVIL ACTION FILE NO. 1:12-CV-00531-SCJ |

## AMENDED COMPLAINT

Plaintiffs Jack Galardi, Red Eyed, Inc. d/b/a Crazy Horse Saloon ("Red Eyed"), Walleye, LLC, Mia Luna, Inc. d/b/a Pink Pony South ("Mia Luna") and JGP&P, LLC hereby file this Amended Complaint for relief against Defendants The City of Forest Park and Corine Dayton, Sparkle Adams, Maudie McCord, Linda Lord and John Parker, individually (all Defendants hereinafter referred to collectively as the "City") and show the Court as follows:

1.

This action arises out of Defendants' ongoing campaign to drive Red Eyed and Mia Luna (each a "Business" and together, the "Businesses") out of business by legislating illegal and unconstitutional ordinances and by selectively enforcing City ordinances and other laws against the Businesses in an attempt to justify the City's arbitrary, capricious and selective decisions to deny Plaintiffs' applications for adult entertainment and business licenses.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiff Red Eyed Inc. is a Georgia Corporation that, until recently, operated a business in Forest Park, Clayton County, Georgia.

3.

Plaintiff Mia Luna, Inc. is a Florida Corporation that, until recently, operated a business in Forest Park, Clayton County, Georgia.

4.

Plaintiff Walleye, LLC is a Nevada limited liability company that owns property located at 3920 Jonesboro Road, Forest Park, Georgia (the "Jonesboro Road Property") on which Red Eyed operated its business.

5.

Plaintiff JGP&P, LLC is a Nevada limited liability company that owns property located at 4730 Frontage Road, Forest Park, Georgia (the "Frontage Road Property") on which Mia Luna operated its business.

6.

Plaintiff Jack Galardi is the sole shareholder of Red Eyed and Mia Luna.

7.

Defendant City of Forest Park (the "City") is a municipal corporation existing under the laws of the State of Georgia.  The City may be served through its Mayor, Corine Deyton, at 745 Forest Parkway, Forest Park, Georgia and is subject to the jurisdiction of this Court.

8.

Defendant Corine Deyton is the Mayor of the City.  Ms. Deyton may be served at 745 Forest Parkway, Forest Park, Georgia and is subject to the jurisdiction of this Court.

9.

 Defendants Sparkle Adams, Maudie McCord and Linda Lord are Council Members of the City.  Said Defendants may be served at 745 Forest Parkway, Forest Park, Georgia and are subject to the jurisdiction of this Court.

10.

Defendant John Parker is the City Manager for the City.  Mr. Parker may be served at 745 Forest Parkway, Forest Park, Georgia and is subject to the jurisdiction of this Court.

11.

This Complaint presents federal questions over which this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

12.

This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

13.

Venue is proper pursuant to 28 U.S.C. § 1391(b).

14.

At all times relevant to this Complaint and in taking the actions described herein, Defendants acted under color of law.

15.

The individual Defendants are being sued in their individual capacities because the individual Defendants intentionally discriminated against Plaintiffs with the purpose of injuring them and acted oppressively, maliciously and

corruptly toward Plaintiffs, with the result of causing the Plaintiffs special damages.

## BACKGROUND

**A.     The Businesses began operations under proper permits and zoning.**

   **1.      Red Eyed began lawful operations in the City.**

16.

In 1993, Red Eyed obtained proper licenses and began operating in the City as an adult entertainment establishment with nude dancing, open booths and on-premise alcohol service.

17.

In 1997, the City adopted an adult entertainment ordinance (the "1997 Ordinance") that, among other things, prohibited sexually oriented businesses from selling or allowing on-site alcohol consumption.

18.

Red Eyed filed a lawsuit in Clayton County Superior Court (the "1997 Lawsuit") asking the court to declare certain provisions of the 1997 Ordinance unconstitutional.

19.

The parties settled the 1997 Lawsuit pursuant to an agreement (the "1997 Settlement Agreement") whereby the City agreed, among other things, to refrain from enforcing the provision prohibiting alcohol sale or consumption at sexually oriented businesses.

**2.      Mia Luna commenced lawful operations in the City.**

20.

In October 2003, the City issued a zoning verification to Mia Luna certifying that the Frontage Road Property was zoned for use as an adult entertainment establishment with nude dancing and on-premise alcohol service.  A copy of the zoning verification for the Frontage Road Property is attached as hereto as Exhibit A.

21.

After the City issued the zoning verification to Mia Luna, it threatened to retract that verification.  As a result, Mia Luna sued the City.

22.

The parties resolved the lawsuit concerning the zoning of the Frontage Road Property pursuant a settlement agreement (the "2004 Settlement Agreement") and a consent order (the "Consent Order") that provided that Mia Luna could use the

Frontage Road Property as an adult entertainment establishment with nude dancing and on-premise alcohol service.

23.

In reliance on the zoning verification, the 2004 Settlement Agreement, and the Consent Order, JGP&P purchased the Frontage Road Property for the purpose of leasing the property to Mia Luna for use as an adult entertainment establishment with nude dancing and alcohol service.

24.

When JGP&P purchased the Frontage Road Property, the area around the property was blighted and lacked commercial investment.

25.

When JGP&P purchased the Frontage Road Property, the property itself contained abandoned and dilapidated buildings frequented by transients and had next to no value.

26.

The City issued building permits to Mia Luna that approved its building and floor plans for an adult entertainment establishment with open booths on the Frontage Road Property.

27.

In reliance on the 2004 Settlement Agreement, the Consent Order, the zoning verification and the building permit, JGP&P spent $2,000,000 to acquire and improve the Frontage Road Property for the purpose of leasing the Property to Mia Luna.

28.

In reliance on the 2004 Settlement Agreement, the Consent Order, the zoning verification and the building permit, Mia Luna and Jack Galardi spent in excess of $3,600,000 to renovate the Frontage Road Property for use as an adult entertainment establishment with nude dancing, alcohol service and booths.

**3.    Red Eyed moved to a new location in the City.**

29.

 In 2007, the City issued a zoning verification certifying that the Jonesboro Road Property was zoned for use as an adult entertainment establishment with nude dancing and on-premise alcohol service.  A copy of the zoning verification for the Jonesboro Road Property is attached hereto as Exhibit B.

30.

In reliance on 1997 Settlement Agreement and the zoning verification, Walleye purchased the Jonesboro Road Property for the purpose of leasing the

property to Red Eyed for use as an adult entertainment establishment with alcohol service.

31.

When Walleye purchased the Jonesboro Road Property, the area around the property was blighted and lacked commercial investment.

32.

When Walleye purchased the Jonesboro Road Property, the property itself contained abandoned and dilapidated buildings frequented by transients and had next to no value.

33.

The City issued building permits to Red Eyed for the Jonesboro Road Property that approved the Business's building and floor plans for an adult entertainment establishment with open booths.

34.

In reliance on the 1997 Settlement Agreement, the zoning verification and the building permit, Walleye spent $1,000,000 to acquire and improve the Jonesboro Road Property for the purpose of leasing the Property to Red Eyed.

35.

In reliance on 1997 Settlement Agreement, the zoning verification and the building permits issued by the City, Red Eyed and Jack Galardi spent in excess of $1,250,000 to renovate the Jonesboro Road Property for use as an adult entertainment establishment with nude dancing, alcohol service and booths.

36.

But for the City's assurances and conduct, Plaintiffs would not have invested money to purchase the Frontage Road and Jonesboro Road Properties (together, the "Properties") or develop the Businesses.

**B.** **After Plaintiffs invested millions of dollars to acquire and renovate the Properties, the City began a campaign to eradicate the Businesses.**

37.

In 2008, the City elected a new mayor and two new City council members who took office in January, 2009.

38.

Almost immediately after the new mayor and City council members took office, the City began passing legislation aimed at shutting down the Businesses and selectively enforcing certain law against them.

39.

The City and the individual Defendants intentionally discriminated against Plaintiffs for the purpose of driving Red Eyed and Mia Luna out of business.  Such conduct was willful and malicious and undertaken with actual intent to injure Plaintiffs.

**1.  The City passed ordinances hostile to the adult entertainment industry.**

40.

On March 23, 2009, the City revised City Code section 9-12-1 et seq (the "Adult Entertainment Code") by, among other things, prohibiting the sale or consumption of alcohol at businesses that offered nude dancing and banning the use of any booths at those establishments.

41.

On April 10, 2009, Plaintiffs filed a complaint styled as *Galardi et al v. City of Forest Park et al*, in the United States District Court for the Northern District of Georgia, Civil Action No. 1:09-CV-0965 (the "2009 Federal Lawsuit") challenging the constitutionality of the Adult Entertainment Code.[1]

---

[1] The 2009 Federal lawsuit was ultimately dismissed due to Plaintiffs' lack of standing.

42.

While the 2009 Federal Lawsuit was pending, the City passed Ordinance No. 10-07 to further amend the Adult Entertainment Code.

43.

Like Ordinance 09-25, Ordinance No. 10-07 prohibited the sale or consumption of alcohol at businesses with nude dancing and banned the use of any booths at those establishments.

44.

The restrictions imposed by Ordinance No. 10-07 substantially diminished the value of the Businesses and the Properties.

45.

In December 2010, the City non-renewed the Businesses' adult entertainment licenses based on allegations that the Businesses used booths. Therefore, on January 1, 2011, the Businesses began operating as "bikini bars" under appropriate business and alcohol licenses.[2]

---

[2] The City amended the Adult Entertainment Code yet again in December 2011 to bolster the "Findings of Fact." The substance of the Adult Entertainment Code, however, did not change.

**2. The City devised plans to take the Businesses' alcohol and business licenses.**

　　**a. The City targeted the Businesses for harassment and selective aggressive law enforcement.**

46.

In January 2011, the City began selectively and aggressively enforcing Section 9-2-98 of the Forest Park Code (the "Alcohol Code") against the Businesses.  Within the three-day period from January 22 to January 24, 2011, Forest Park police officers visited the Businesses seven (7) times under the guise of routine checks for compliance with the Alcohol Code.

47.

　Upon information and belief, the City did not make repeated compliance checks during the course of a single week at any other establishment licensed to provide on-premise alcohol service where no violation was found during the first compliance check.

48.

This selective enforcement continued until the Businesses closed in January 2012.

49.

While the City was looking for an excuse to shut down the Businesses,

Forest Park police learned of a fight that occurred inside the ladies' restroom at

Red Eyed and used its purported investigation of the fight to secure and execute a

grossly overbroad search warrant for the Business (the "First Red Eyed Warrant").

50.

The scope of the First Red Eyed Warrant included, among other things, all

computers, electronic video devices, thumb drives, cameras and video recording

devices at the Business even though there are no cameras where the fight took

place.

51.

A Clayton County magistrate judge signed the First Red Eyed Warrant on

April 8, 2011.

52.

Forest Park police searched Red Eyed on April 7, 2011, a day before the

First Red Eyed Warrant was signed.

53.

City police secured a second search warrant (the "Second Red Eyed

Warrant") for the purported purpose of further investigating the fight.

54.

The Second Red Eyed Warrant included items, including computer files, that could not possibly be relevant to the incident purportedly under investigation.

55.

The City then bootstrapped its way into a third illegal warrant by claiming that officers witnessed violations of the public indecency law during their review of the earlier illegally seized property.

**b. The City revised its licensing laws to create grounds for revoking the Businesses' alcohol and business licenses.**

56.

In May 2011, the City amended City Code section 9-1-12 to provide additional grounds for suspending or revoking licenses issued under Title 9 of the City Code.

57.

The City amended Code section 9-1-12 to provide that if the city manager learned that a licensee allowed unlawful activities at its business premises, the city manager shall conduct a hearing at which the licensee must show cause why the City should not suspend or revoke its licenses.

58.

The city manager determined that there should be a hearing concerning the Businesses' licenses, but recused himself from conducting the hearing.

59.

On September 19, 2011, the City scheduled a special call meeting for September 21, 2011 at which it passed Ordinance No. 11-39 appointing T. Michael Martin to conduct the hearings concerning the Businesses' licenses.

**c. The City used its new law to revoke the Businesses' alcohol and business licenses.**

60.

Hearing Officer Martin conducted hearings concerning the Businesses' alcohol and business licenses on November 22 and November 23, 2011 (the "Show Cause Hearings").

61.

The City deemed that the rules of evidence would not apply to the Show Cause Hearings.  (City Code section 9-1-12(c).)  Therefore, Hearing Officer Martin considered all documents and testimony presented to him.

62.

During the Show Cause Hearings, Hearing Officer Martin allowed the City to present portions of videotapes illegally seized from Red Eyed.

63.

During the Show Cause Hearings, Hearing Officer Martin allowed the City to present testimony from unlicensed investigators that the City hired to uncover, and possibly to induce, unlawful activity at the Businesses.

64.

On December 5, 2011, Hearing Officer Martin issued decisions (the "Revocation Orders") revoking the Businesses' alcohol and business licenses. True and correct copies of the Revocation Orders are attached hereto as Exhibit C.[3]

### d. The City crafted new license renewal laws to create grounds for non-renewing the Businesses' licenses for 2012.

65.

City business licenses must be renewed annually.  City Code § 9-1-3.

66.

Prior to December 5, 2011, the only requirements to renew a business license were (1) submission of an application and (2) payment of all past due City taxes and assessments.

---

[3] Red Eyed, Mia Luna and Galardi timely filed a Petition for Writ of Certiorari concerning the Revocation Orders.  (*See Galardi et al v. City of Forest Park and T. Michael Martin,* in the Superior Court of Clayton County, Civil Action No. 2011CV05280-6.)

67.

On December 5, 2011, the very day that Hearing Officer Martin signed the Revocation Orders, the City revised City Code section 9-1-2 (the "Non-Renewal Code") to give itself the power to non-renew business licenses if: (1) the applicant had any Title 9 license issued suspended or revoked in the past 12 months; or (2) the director of finance obtained evidence that the applicant allowed unlawful activity at the business premises.  Such denial must be sent to the applicant by United States mail overnight delivery.  City Code section 9-1-2.

68.

The changes to City Code section 9-1-2 clearly target Plaintiffs, as the City's next move was to non-renew the Businesses' business licenses (the "Business Licenses") on the exact grounds offered by the revised ordinance.

**e.  The City non-renewed the Business Licenses pursuant to the new ordinance.**

69.

On December 14, 2011, the Businesses applied to renew their Business Licenses for 2012.

70.

In letters dated December 29, 2011 (the "Non-Renewal Letters"), the director of finance denied the Businesses' renewal applications based on (1) failure

to pay outstanding taxes and (2) evidence of violations of the City's public indecency ordinance.  True and correct copies of the Non-Renewal Letters are attached hereto as Exhibit D.

71.

In violation of its own ordinance, the City failed to transmit the Non-Renewal Letters by United States mail overnight delivery.

72.

It is the City's policy to defer action on, or "hold", a business license application if the applicant owes taxes to the City.  In such cases, the City gives the applicant notice and ten (10) days to pay the back taxes before the City denies the application.

73.

Despite its policy, the City did not notify the Businesses or provide them an opportunity to pay the back taxes before it denied their applications.

74.

The City regularly renews business licenses even if the applicant owes taxes.  In fact, the City renewed Mia Luna's business license in 2009 and 2010 even though it owed taxes at the time.

75.

Upon information and belief, in 2012 the City renewed the alcohol and business licenses of a business that Forest Park Police cited for having illegal gaming machines and illegal gambling on the premises.

76.

The Businesses timely appealed the non-renewal decisions.

77.

On December 30, 2011, Plaintiffs paid all outstanding taxes owed by the property owners, operating companies and even affiliated entities or persons.

78.

The finance director also denied the Businesses' renewal applications based on information concerning unlawful conduct in the transcripts of the Show Cause Hearings and the Revocation Orders.

79.

On January 3, 2012, the city manager, John Parker ("Parker"), conducted a hearing concerning the finance director's non-renewal decisions (the "Non-Renewal Hearing").  A true and correct copy of the transcript of the Non-Renewal Hearing is attached hereto as Exhibit E.

80.

During the Non-Renewal Hearing, City attorney Robert Mack ("Mack") prosecuted the City's case.  Simultaneously, Mack provided legal advice and counsel to Parker.

81.

During the Non-Renewal Hearing, in addition to being the ultimate arbiter, Parker testified as a witness.

82.

On January 5, 2012, Parker affirmed the denial of the Business Licenses for 2012.  A copy of the order upholding the denial (the "Denial Order") is attached hereto as Exhibit F. [4]

**F.     The City succeeded in shutting down the Businesses.**

83.

On January 12, 2012, the City sent a letter (the "Warning Letter") to each Business threatening to close the Businesses effective midnight on January 16, 2012.  The Warning Letter, a copy of which is attached hereto as Exhibit G, states:

---

[4] Red Eyed, Mia Luna and Galardi timely filed a Petition for Writ of Certiorari concerning the non-renewal decisions.  (*See Galardi et al v. City of Forest Park and John Parker,* in the Superior Court of Clayton County, Civil Action No. 2012CV00194-6.)

Be advised that you have until midnight, Monday, January 16, 2012 to voluntarily close said business.  Should you remain open thereafter, the City's Police Department will begin issuing citations for all City ordinance violations that apply.  The City Police also have legal authority to make appropriate arrests and may do so in the officer's discretion.

84.

The Businesses ceased operations on January 15, 2012 and remain closed.

85.

Given the location and history of the Properties, the Properties have no value other than for use as adult entertainment establishments or bikini bars as previously operated at those locations.

86.

As a result of Defendants' conduct, the Properties now have no viable economic use.

## COUNT I:  RELIEF UNDER 42 U.S.C. § 1983

87.

Plaintiffs incorporate the allegations set forth in Paragraphs 1 through 86, above, as if  set forth fully herein.

88.

Plaintiffs exhausted all administrative and state law remedies.

89.

The City acted under the color of state law in depriving Plaintiffs of their constitutionally guaranteed rights.  The following paragraphs set forth the individual constitutional rights violated.

**A.   Violation of Equal Protection Rights**

90.

The Fourteenth Amendment guarantees that all persons shall be treated alike by government under like circumstances and conditions.

91.

The City treated Plaintiffs differently from other similarly situated businesses in that, for the past three years, the City enacted a series of ordinances designed to regulate Red Eyed and Mia Luna out of business.

92.

To drive the Businesses out of business, the City: (1) made multiple revisions to the Adult Entertainment Code; (2) created new grounds and procedures for revoking licenses; (3) created new grounds and procedures for non-renewing licenses; and (4) passed an ordinance specifically to appoint a hearing officer for the Show Cause Hearings.

93.

The City treated the Businesses differently from other similarly situated businesses in that the City singled out the Businesses for aggressive enforcement of the Alcohol Code.

94.

During the three-day period from January 22 to January 24, 2011, Forest Park police officers visited the Businesses seven (7) times under the guise of routine checks for compliance with the Alcohol Code.

95.

Upon information and belief, the City did not make repeated compliance checks during the course of a single week at any other establishment licensed to provide on-premise alcohol service where no violation was found during the first compliance check.

96.

The City treated the Businesses differently from other similarly situated businesses in that the City non-renewed the Business Licenses without providing notice or 10 days for Plaintiffs to pay the back taxes.

97.

The City official in charge of license renewal is unaware of a single other instance in which the City non-renewed a license on the grounds of outstanding taxes without affording the applicant notice and 10 days to cure the back taxes.

98.

The City treated the Businesses differently from other similarly situated businesses in that the City non-renewed the Business Licenses based on alleged instances of lawful conduct at the Businesses' premises.

99.

After the City non-renewed the Business Licenses, it renewed the alcohol and business licenses of a Shell gas station that Forest Park Police cited for having illegal gaming machines and illegal gambling on the premises.

100.

The City's discriminatory treatment of Plaintiffs described in Paragraphs 91 through 99 was intentional and undertaken with ill-will and for the deliberate purpose of driving Red Eyed and Mia Luna out of business.

101.

The City's conduct with respect to the Businesses intentionally discriminates in an arbitrary, unreasonable, capricious and unconstitutional manner between the

Businesses and other similarly situated persons in violation of the Fourteenth

Amendment of the Constitution of the United States.

**B.   Violation of Fifth Amendment Takings Clause**

102.

No person shall "be deprived of life, liberty, or property, without due

process of law; nor shall private property be taken for public use, without just

compensation."  U. S. Const amend V.

103.

In reliance on the 1997 Settlement Agreement, the 2004 Settlement

Agreement, the Consent Oder and the zoning verifications and building permits

issued by the City, Walleye and JGP&P (the "Property Owners") made substantial

investments in and improvements to the Properties.

104.

The Property Owners have vested rights in the use of the Properties as adult

entertainment establishments with nude dancing, open booths and on-premise

alcohol service.

105.

Even if the Property Owners do not have vested rights to use the Properties

as adult entertainment establishments with nude dancing, alcohol service and

booths, they have vested rights to use the Properties as restaurants with alcohol service or, at the least, for commercial business purposes.

106.

Given their location and history, the Properties have no economic value other than for use as adult entertainment establishments or bikini bars as previously operated thereon.

107.

By non-renewing the Operators' adult entertainment licenses and the Business Licenses, the City deprived the Property Owners of all viable economic use of the Properties.

108.

Such denial constitutes a taking of the Property Owners' property without just compensation in violation of the Fifth Amendment of the United States Constitution.

109.

By non-renewing the Operators' adult entertainment licenses and the Business Licenses, the City interfered with the Property Owners' reasonable investment-backed expectations to use the Properties as adult entertainment establishments nude dancing, alcohol service and booths.

110.

Such interference is a taking of the Property Owners' property without just compensation in violation of the Fifth Amendment of the United States Constitution.

111.

The Property Owners exhausted all administrative remedies.

112.

The Property Owners filed an action in the Superior Court of Clayton County (the "Inverse Condemnation Claim") to adjudicate their Takings Claim.  A copy of the Takings Claim is attached hereto as Exhibit H.

113.

The Inverse Condemnation Action includes a "Jennings Reservation" of the Property Owners' right to bring a takings claim in Federal Court.

114.

Plaintiffs are entitled to compensation for the taking of their property.

## C.   Violation of Procedural Due Process Rights

115.

No state may deny any person of property without due process of law.  U. S. Const amend XIV.

116.

Plaintiffs have property rights to use the Properties as adult entertainment establishments or, in the alternative as bikini bars or, at the least, for commercial purposes.

117.

Defendants' course of conduct that resulted in the non-renewal of the Business Licenses deprived Plaintiffs of protected property rights.

118.

City Code section 9-1-12 requires licensees to "show cause" as to why their licenses should not be suspended or revoked but does not set forth any ascertainable standard for the licensee's burden or for the facts the City should consider in suspending or revoking licenses.

119.

In deciding to revoke the Businesses' alcohol and business licenses, the Hearing Officer relied on illegally seized evidence.

120.

In deciding to revoke the Businesses' alcohol and business licenses, the Hearing Officer relied on unreliable testimony from unlicensed investigators.

121.

The Hearing Officer's decision to revoke the Businesses' alcohol and business licenses was arbitrary and capricious.

122.

Because the City's decisions to non-renew the Business Licenses relied on the transcripts of the Show Cause Hearings and the Revocation Orders, all due process violations related to the Show Cause Hearings and the Revocation Orders are incorporated into the non-renewal decisions.

123.

In March 2011, Plaintiffs filed a lawsuit in which Mr. Parker was named as a defendant, both in his officially capacity and individually.  In that lawsuit, Plaintiffs sought in excess of $70,000,000 in compensatory damages and $50,000,000 in punitive damages from the defendants, including Mr. Parker.

124.

Mr. Parker recused himself from conducting the Show Cause Hearings but still sat as the arbiter for the non-renewal process.

125.

During the non-renewal hearing, Mr. Parker assumed dual roles of witness for the City as well as arbiter and received legal advice from the prosecutor during the hearing.

126.

Because Mr. Parker was the arbiter, the non-renewal process was biased against Plaintiffs.

127.

The license non-renewal process, including the use of Mr. Parker as the arbiter, was fundamentally unfair and constitutionally inadequate.

128.

As the Businesses were denied of their Business Licenses without due process, they are entitled to have the Business Licenses reinstated by the City.

129.

Plaintiffs pray for an order from this Court returning the Properties and Businesses to the *status quo ante*, where they were permitted to use the Properties as adult entertainment establishments, with nude dancing, open booths and alcohol service. In addition, Plaintiffs are entitled to monetary compensation for their pecuniary injuries caused by the City.

## COUNT II:  VIOLATIONS OF GEORGIA CONSTITUTION

### 130.

Paragraphs 1 through 129 are hereby incorporated by reference as if rewritten in their entirety.

### 131.

Plaintiffs exhausted all administrative law remedies.

**A.     Violation of Equal Protection Rights**

### 132.

Article I, Section I, Paragraph II of the Constitution of the State of Georgia guarantees that no person shall be denied equal protection of the laws.

### 133.

The City treated Plaintiffs differently from other similarly situated businesses in that, for the past three years, the City enacted a series of ordinances designed to regulate Red Eyed and Mia Luna out of business.

### 134.

 To drive the Businesses out of business, the City: (1) made multiple revisions to the Adult Entertainment Code; (2) created new grounds and procedures for revoking licenses; (3) created new grounds and procedures for non-

renewing licenses; and (4) passed an ordinance specifically to appoint a hearing officer for the Show Cause Hearings.

135.

The City treated the Businesses differently from other similarly situated businesses in that the City singled out the Businesses for aggressive enforcement of the Alcohol Code.

136.

During the three-day period from January 22 to January 24, 2011, Forest Park police officers visited the Businesses seven (7) times under the guise of routine checks for compliance with the Alcohol Code.

137.

Upon information and belief, the City did not make repeated compliance checks during the course of a single week at any other establishment licensed to provide on-premise alcohol service where no violation was found during the first compliance check.

138.

The City treated the Businesses differently from other similarly situated businesses in that the City non-renewed the Business Licenses without providing notice or 10 days for Plaintiffs to pay the back taxes.

139.

The City official in charge of license renewal is unaware of a single other instance in which the City non-renewed a license on the grounds of outstanding taxes without affording the applicant notice and 10 days to cure the back taxes.

140.

The City treated the Businesses differently from other similarly situated businesses in that the City non-renewed the Business Licenses based on alleged instances of lawful conduct at the Businesses' premises.

141.

After the City non-renewed the Business Licenses, it renewed the alcohol and business licenses of a Shell gas station that Forest Park Police cited for having illegal gaming machines and illegal gambling on the premises.

142.

The City's discriminatory treatment of Plaintiffs described in Paragraphs 133 through 141 was intentional and undertaken with ill-will and for the deliberate purpose of driving Red Eyed and Mia Luna out of business.

143.

The City's conduct with respect to the Businesses intentionally discriminates in an arbitrary, unreasonable, capricious and unconstitutional manner between the

Businesses and other similarly situated persons in violation of the Fourteenth Amendment of the Constitution of the United States.

**B.     Violation of Substantive Due Process Rights**

144.

"No person shall be deprived of life, liberty, or property except by due process of law."   Ga. Const. Art. I, Sec. I, Para. I.

145.

In reliance on the 1997 Settlement Agreement, the 2004 Settlement Agreement, the Consent Order and the zoning verifications and building permits issued by the City, Plaintiffs made substantial investments in the Properties and the Businesses.

146.

Plaintiffs have vested rights in the use of the Properties as adult entertainment establishments with nude dancing, open booths and on-premise alcohol service.

147.

The City deprived Plaintiffs of their vested rights to use the Properties as adult entertainment establishments with nude dancing, open booths and on-premise

alcohol service by passing the Adult Entertainment Code and non-renewing the Businesses' adult entertainment licenses.

148.

Defendants' conduct that resulted in the non-renewal of the Businesses' adult entertainment licenses was not narrowly tailored to serve a compelling state interest.

149.

Such non-renewal deprived Plaintiffs of property rights without due process of law.

150.

Even if Plaintiffs do not have a vested right to use the Properties as adult entertainment establishments with nude dancing, open booths and on-premise alcohol service, Plaintiffs have a vested right to use the Properties as bikini bars or, at the least, for commercial business purposes.

151.

The City deprived Plaintiffs of their vested rights to use the Properties as bikini bars for commercial business purposes through a course of conduct that culminated in the non-renewal of the Business Licenses.

152.

The City deprived Plaintiffs of their vested rights to use the Properties as bikini bars or for any commercial use whatsoever by non-renewing the Business Licenses.

153.

Defendants' conduct that resulted in the non-renewal of the Businesses Licenses was not narrowly tailored to serve a compelling state interest.

154.

Such denial of Plaintiffs' property rights is a taking without due process of law.

155.

Plaintiffs are entitled to compensation for the taking unconstitutional deprivation of their property rights.

156.

In the alternative, Plaintiffs are entitled to return to the *status quo ante* wherein they are entitled to use the Properties in accordance with their vested rights.

## C.    Violation of Takings Clause

157.

The City may not take Plaintiffs' property for public use without just compensation.  Ga. Const. Art. I, Sect. III, Para. I.

158.

In reliance on the 1997 Settlement Agreement, the 2004 Settlement Agreement, the Consent Oder and the zoning verifications and building permits issued by the City, the Property Owners made substantial investments in the Properties.

159.

The Property Owners have vested rights in the use of the Properties as adult entertainment establishments with nude dancing, open booths and on-premise alcohol service.

160.

Even if the Property Owners do not have vested rights to use the Properties as adult entertainment establishments with nude dancing, alcohol service and open booths, they have vested rights to use the Properties as restaurants with alcohol service or, at the least, for commercial businesses purposes.

161.

Given their location and history, the Properties have no economic value other than for use as adult entertainment establishments or bikini bars as previously operated thereon.

162.

By non-renewing the Operators' adult entertainment and business licenses, the City deprived the Property Owners of all viable economic use of the Properties.

163.

Such denial constitutes a taking of the Property Owners' property without just compensation.

164.

By non-renewing the Operators' adult entertainment and business licenses, the City interfered with the Property Owners' reasonable investment-backed expectations to use the Properties as adult entertainment establishments with nude dancing, alcohol service and booths.

165.

Such interference is a taking of the Property Owners' property without just compensation.

166.

The Property Owners are entitled to compensation for the Taking of their property.

**D.    Violation of Procedural Due Process Rights**

167.

Plaintiffs have a property rights to use the Properties as adult entertainment establishments or, in the alternative as bikini bars or, at the least for commercial purposes.

168.

Defendants' course of conduct that resulted in the non-renewal of the Business Licenses deprived Plaintiffs of protected property rights.

169.

City Code section 9-1-12 requires licensees to "show cause" as to why their licenses should not be suspended or revoked but does not set forth any ascertainable standard for the licensee's burden or for the facts the City should consider in suspending or revoking licenses.

170.

 In deciding to revoke the Businesses' alcohol and business licenses, the Hearing Officer relied on illegally seized evidence.

171.

In deciding to revoke the Businesses' alcohol and business licenses, the Hearing Officer relied on unreliable testimony from unlicensed investigators.

172.

The Hearing Officer's decision to revoke the Businesses' alcohol and business licenses was arbitrary and capricious.

173.

Because the City's decisions to non-renew the Business Licenses relied on the transcripts of the Show Cause Hearings and the Revocation Orders, all due process violations related to the Show Cause Hearings and the Revocation Orders are incorporated into the non-renewal decisions.

174.

There is no ascertainable standard for the City finance director's non-renewal of business licenses.

175.

In the absence of an ascertainable standard, the City finance director's decision to non-renew the Business Licenses was unreasonable, arbitrary and capricious and violated Plaintiffs' due process rights.

176.

As the Businesses were denied of their Business Licenses without due process, they are entitled to have the Business Licenses reinstated by the City.

177.

In March 2011, Plaintiffs filed a lawsuit in which Mr. Parker was named as a defendant, both in his officially capacity and individually.  In that lawsuit, Plaintiffs sought in excess of $70,000,000 in compensatory damages and $50,000,000 in punitive damages from the defendants, including Mr. Parker.

178.

Mr. Parker recused himself from conducting the Show Cause Hearings but still sat as the arbiter for the non-renewal process.

179.

During the non-renewal hearing, Mr. Parker assumed dual roles of witness for the City as well as arbiter and received legal advice from the prosecutor during the hearing.

180.

Because Mr. Parker was the arbiter, the non-renewal process was biased against Plaintiffs.

181.

The license non-renewal process, including the use of Mr. Parker as the arbiter, was fundamentally unfair and constitutionally inadequate.

182.

As the Businesses were denied of their Business Licenses without due process, they are entitled to have the Business Licenses reinstated by the City.

183.

Plaintiffs pray for an order from this Court returning the Properties and Businesses to the *status quo ante*, where they were permitted to use the Properties as adult entertainment establishments, with nude dancing, open booths and alcohol service.  In addition, Plaintiffs are entitled to monetary compensation for their pecuniary injuries caused by the City.

## COUNT III: INVERSE CONDEMNATION

184.

Paragraphs 1 through 185 are hereby incorporated by reference as if rewritten in their entirety.

185.

The City may not take Plaintiffs' property for public use without just compensation.  Ga. Const. Art. I, Sect. III, Para. I.

186.

In reliance on the 1997 Settlement Agreement, the 2004 Settlement Agreement, the Consent Oder and the zoning verifications and building permits issued by the City, the Property Owners made substantial investments in the Properties.

187.

The Property Owners have vested rights in the use of the Properties as adult entertainment establishments with nude dancing, open booths and on-premise alcohol service.

188.

Even if the Property Owners do not have vested rights to use the Properties as adult entertainment establishments with nude dancing, alcohol service and open booths, they have vested rights to use the Properties as restaurants with alcohol service or, at the least, for commercial businesses purposes.

189.

Given their location and history, the Properties have no economic value other than for use as adult entertainment establishments or bikini bars as previously operated thereon.

190.

By non-renewing the Operators' adult entertainment and business licenses, the City deprived the Property Owners of all viable economic use of the Properties.

191.

Such denial constitutes a taking of the Property Owners' property without just compensation.

192.

By non-renewing the Operators' adult entertainment and business licenses, the City interfered with the Property Owners' reasonable investment-backed expectations to use the Properties as adult entertainment establishments with nude dancing, alcohol service and booths.

193.

Such interference is a taking of the Property Owners' property without just compensation.

194.

The Property Owners are entitled to compensation for the Taking of their property.

## COUNT IV:  DAMAGES UNDER O.C.G.A. § 36-33-4
### (against individual Defendants)

195.

Paragraphs 1 through 194 are hereby incorporated by reference as if rewritten in their entirety.

196.

"Members of the council and other officers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law."  O.C.G.A. § 36-33-4.

197.

The individually named City Council Members acted oppressively, maliciously and corruptly by passing a series of ordinances designed to shut down the Businesses.

198.

Defendant Deyton acted oppressively, maliciously and corruptly by failing to exercise her authority to veto legislation designed to shut down Plaintiffs' Businesses.

199.

Defendant Parker acted oppressively, maliciously and corruptly in determining that there should be a hearing concerning the revocation or suspension of the Businesses' alcohol and business licenses.  Defendant Parker so acted with actual intent to injure Plaintiffs.

200.

Defendant Parker acted oppressively, maliciously and corruptly in affirming the non-renewal of the Business Licenses.  Defendant Parker so acted with actual intent to injure Plaintiffs.

201.

Upon information and belief, the individual Defendants directed and/or ordered the City of Forest Park Police Department to target the Businesses and their customers for selective aggressive enforcement of the Alcohol Code, the Adult Entertainment Ordinance, public indecency laws and drunk driving laws. The individual Defendants so acted with malice and with the actual intent to injure Plaintiffs.

202.

Upon information and belief, the individual Defendants directed and/or ordered the City Chief of Police to non-renew the Business's adult entertainment

licenses.  The individual Defendants so acted with malice and with the actual intent to injure Plaintiffs.

203.

Upon information and belief, the individual Defendants directed and/or ordered the City Finance Director to non-renew the Business Licenses.  The individual Defendants so acted with malice and with the actual intent to injure Plaintiffs.

204.

The individual Defendants acted beyond the scope of their authority in their actions directed at having the City Chief of Police and the City Finance Director non-renew the Businesses' licenses.

205.

The individual Defendants' conduct concerning the Businesses' licenses was motivated by the Defendants' distaste for Plaintiffs' businesses and personal animus toward their principals.  Such conduct is not reasonably related to a legitimate government interest.

206.

Plaintiffs have suffered and continue to suffer special damages as a result of the individual Defendants' oppressive, malicious and corrupt conduct.  Plaintiffs

are entitled to recover monetary damages from the individual Defendants in an amount to be proven at trial but not less than $15,000,000.00.

## COUNT VI:  COSTS AND ATTORNEY'S FEES UNDER 42 U.S.C. § 1988

207.

Paragraphs 1 through 206 are hereby incorporated by reference as if rewritten in their entirety.

208.

Plaintiffs are entitled to recover their costs and reasonable attorney's fees to enforce their rights under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs respectfully pray that this Court:

a.      issue summons and order that Defendants be served with process;

b.      declare the City's enforcement of the Adult Entertainment Code against the Businesses unconstitutional;

c.      declare the City's enforcement of the Non-Renewal Code against the Businesses unconstitutional;

d.      order the City reinstate the Businesses' adult entertainment licenses;

e.      order the City to reinstate the Business Licenses;

f.      award the Property Owners compensation for the taking of their Property;

g.     award Plaintiffs compensatory damages for the violations of their civil

rights;

h.     award compensatory damages against the individual Defendants in an

amount to be proven at trial;

i.     award punitive damages against the individual Defendants in an

amount to be determined in the enlightened consciousness of a jury;

j.     award Plaintiffs their reasonable costs and attorney's fees incurred in

bringing this action; and

k.     grant such other relief as the Court deems appropriate.

Respectfully submitted this 5th day of April, 2012.


/s/  Simon H. Bloom
Simon H. Bloom, III
Georgia Bar No. 064298
Stephanie A. Everett
Georgia Bar No. 253075
Sherri G. Buda
Georgia Bar No. 093399

THE BLOOM LAW FIRM LLP
977 Ponce de Leon Ave. NE
Atlanta, Georgia 30306
Phone:  404-577-7710
Facsimile:  404-577-7715
*Attorneys for Plaintiffs*

# <u>CERTIFICATE OF COMPLIANCE WITH RULE 5.IB</u>

Pursuant to Local Rule 7.1(D), N.D. Ga. L.R., I hereby certify that the foregoing pleading has been prepared using one of the font and point selections approved by the Court in Local Rule 5.1B, N.D. Ga.  This document was prepared using Times New Roman 14 pt. font.

Respectfully submitted,

/s/  Simon H. Bloom
Simon H. Bloom, III
Georgia Bar No. 064298
sbloom@bloom-law.com
Stephanie A. Everett
Georgia Bar No. 253075
severett@bloom-law.com
Sherri G. Buda
Georgia Bar No. 093399
sbuda@bloom-law.com

THE BLOOM LAW FIRM LLP
977 Ponce de Leon Ave. NE
Atlanta, Georgia 30306
Phone:  404-577-7710
Facsimile:  404-577-7715
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of April, 2012, I electronically filed the

foregoing **AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF

system which will automatically send email notification of such filing to the

following attorneys of record:

Dana K. Maine
dmaine@fmglaw.com
William J. Linkous
blinkous@fmglaw.com
**Freeman, Mathis & Gary, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948

Robert L. Mack, Jr.
rlmack@mackandharris.com
Joe M. Harris, Jr.
jharris@mackandharris.com
**Mack & Harris, P.C.**
205 Corporate Center Drive, Suite B
Stockbridge, Georgia 30281

Respectfully submitted this 5th day of April 2012.

/s/  Simon H. Bloom
Simon H. Bloom, III
Georgia Bar No. 064298
sbloom@bloom-law.com
Stephanie A. Everett
Georgia Bar No. 253075
severett@bloom-law.com
Sherri G. Buda
Georgia Bar No. 093399
sbuda@bloom-law.com

{00031241.DOCX / }

THE BLOOM LAW FIRM LLP
977 Ponce de Leon Ave. NE
Atlanta, Georgia 30306
Phone:  404-577-7710
Facsimile:  404-577-7715
*Attorneys for Plaintiffs*